Joseph Weeks, defendant below, vs. Samuel Wead, plaintiff below.—*IN ERROR.*

In the sale of personal chattels, where the conveyance is absolute, the want of a change of possession is not merely *prima facie* evidence of fraud, but is a circumstance *per se*, which renders the transaction fraudulent and void.

And, no stipulation in the contract of sale, that the vendor shall remain in possession will take the case out of the rule which requires a change of possesion, if from *the nature of the transaction*, the sale is absolute, and possession can accompany it.

ERROR, to reverse a judgment of Franklin county court.

The action below was trespass for taking a horse. Plea, not guilty; with special notice, that the defendant below would give in evidence on the trial, that he, as high bailiff of said county, took the horse from the possession of one *Brenton Freeman*, and sold him as his property, by virtue of an execution, to him directed, in favour of *Shiveric Holmes*, the sheriff of said county, against the said *Brenton Freeman* and one *Welcome Freeman*.

It appeared on the trial, that the horse in question, together with another horse, were purchased by said *Brenton Freeman*, of the said *S. Holmes*——that some months afterwards, they were attached, together with a pair of oxen, at the suit of *J. Draper*, upon a debt for which *Wead*, (the plaintiff below,) was holden, and also at the suit of said *Wead*; and that while in the custody of the officer, the horses were purchased by *Wead*, at apparently a fair price, which was paid, and the horses taken into possession of *Wead*, where they were kept from eight to ten days,

*Franklin,*
January,
1826.

Weeks
*vs.*
Wead.

two days of which time they were driven by his man, and employed in drawing boards for one *Hapwood,* a creditor of *Brenton Freeman,* which labour was by *Hapwood,* placed to the credit of said *Brenton Freeman*----that after the expiration of the said ten days, they went back into possession of the said *Brenton Freeman,* (who lived about two miles from *Wead,*) and by the consent and permission of *Wead,* by whom they were used and driven in *Brenton Freeman's* employ until some time in the month of August following, which was about six months, when one of them was sold by *Wead.* The other horse still continued in the possession of said *Brenton Freeman,* and in his employ, until December, which was about ten months from the time of the alleged purchase by *Wead,* when it was taken, as alleged, by the defendant on the execution against *Brenton Freeman* and *W. Freeman* and sold in part satisfaction of said execution. The purchase by *Wead* appeared to be a matter of considerable notoriety; and that the horses were his property, to be pretty generally understood in the neighbourhood. There was no evidence to show that it was known in St. Albans, where *Holmes* resided, that *Wead* claimed the horse, though it appeared that *Holmes* was informed by a witness, the day before the levy, that *Wead* claimed the horse.

The counsel for the defendant below requested the court to charge the jury, "that if they should find from the evidence, that after the purchase of the horse by *Wead,* he used the horses eight or ten days, and part of that time, they were used in the employ of *Freeman,* and then by the permission and consent of *Wead,* said horse went into the possession of said *Freeman,* and there remained until taken by the defendant on the execution----that those facts constitute, or go to prove a fraud in law, and the horses were liable to be taken by the creditors of *Freeman.*" This the court refused to do; but did charge the jury, "that actual possession must accompany the sale, and be so continued as to establish the fact of the sale, and render the same a matter of publick notoriety:----that the property of A. may be honestly loaned to B. and the loan continue so long, and under such circumstances, as to amount to a fraud in law, if not in fact, as against creditors----that if the jury found in this case, that there was not such a possession accompanying the sale to *Wead,* or that the sale was not fair and *bona fide,* or if the sale was fair for a valuable consideration, the property actually transferred, and possessed by *Wead,* and that he had suffered the property to go back into the possession of *Freeman,* and there to remain so long, and under such circumstances as to give to him a false credit, that they would consider it a fraud in law, if not a fraud in fact."

Under this charge, the jury returned a verdict for the plaintiff below, and the court rendered judgment thereon. And it was to reverse this judgment, for the errors apparent in the said charge, that the present writ of error was brought.

9

*Franklin,*
*January,*
1826.

Wooks
*vs.*
Woud.

The Court declined hearing the counsel for the plaintiff in error.

*Swift,* for the defendant in error. No presumption is to be made in favour of a bill of exceptions. It is different from a stated case, or special verdict, which are suffered to contain every fact, in the least material to both parties; whereas, a bill of exceptions is drawn up by one party, and contains the matter excepted to, with just enough to connect such matter with the trial.

And it is believed that a writ of error, founded on the refusal of the court to charge the jury as requested, or upon a supposed misdirection, cannot be sustained, unless the bill of exceptions expressly profess to contain all the evidence to the point in question, as in this case, all the evidence relating to the question of fraud.

The defendant contends that the county court were not obliged to charge the jury as requested by the plaintiff in error.

By the common law, the property in personal chattels, as between the parties to a sale, passes by the contract without delivery. As to the creditors of the vendor, it was early decided that the want of delivery and change of possession was *one* of the *evidences* of fraud. And one reported case in England and one in the United States have gone further, and decided, that where the sale is absolute and unconditional, such want of delivery and change of possession is, itself, a fraud.----1 *T. Rep.* 587, *Edwards* vs. *Harben*—1 *Cranch,* 309, *Hamilton* vs. *Russell.*

It is contended that the weight of authorities is not in accordance with these two cases. 1 *Atk.* 167, *Ryal* vs. *Roll & Bucknell* vs. *Roiston,* there cited.----3 *Con. Rep.* 431.----*Long on sales,* 79, 80.----1 *Esp. R.* 206, (notes,) 1 *Shep. Touch.* 67.----2 *Boss & Pull.* 59, *Kid* vs. *Rawlinson.*----2 *Esp. R.* 574, *Cross* vs. *Glode.*----5 *Esp. R.* 22, *Hoffman* vs. *Pitt.*----5 *T. R.* 420, *Estwick* vs. *Caillaud.*----6 *East* 257, *Dewey* vs. *Boynton.*----15 *Mass.* 244.----5 *Johns.* 261, *Barrow* vs. *Paxton.*----4 *Taun.* 823, *Watkins* vs. *Birch.*

If a sale has been founded on proper consideration, and consummated by delivery and a notorious change of possession at the time of the sale, no reported case has decided that a subsequent possession by the vendor should furnish a legal presumption that the original transaction was not *bona fide.*----1 *Shep. Touch.* 67.----1 *Swift's Dig.* 273, and most of the cases above cited.

In this case, as the intent of the parties in the sale is not determined by any conclusion of law, but was properly submitted to the jury, as a question of fact, their verdict, which has negatived all fraudulent purpose, and all false credit and imposition on third persons, ought not to be disturbed.----9 *Johns.* 135, *McInstry* vs. *Tanner.*----2 *Boss. & Pul.* above cited.

The opinion of the Court was pronounced by

PRENTISS, J. It has been repeatedly decided in this state, that to give validity to the sale of personal chattels, as against

Franklin,
January,
1826.

Weeks
vs.
Wend.

creditors, there must be an actual and visible change of possession, and that the retention of the possession by the vendor will render the conveyance fraudulent and void. This doctrine was recognized and adopted in the case of *Durkey* vs. *Mahoney*, decided at the last term in Chittenden county, and, it is believed, has been uniformly acted upon by the courts of this state, for the last fifteen years.

Although a valuable consideration may have been paid, and the real intent of the parties may have been to transfer the property, yet, the possession continuing with the vendor is regarded as giving him a collusive credit, and as operating as a deceit and fraud upon creditors. The conveyance, therefore, is held void as to creditors, though there may be no fraud in fact, in the transaction; for the law, which is in all cases the judge of fraud arising out of facts and intents, infers fraud from the want of a change of possession, as well on the principles of the common law, as upon the construction of the statute against fraudulent conveyances, which, in this state, is in substance the same as the 13 Eliz. Whatever seeming contrariety there may be in the opinions and decisions on this subject, or however they may be supposed to have fluctuated and varied, the true principle to be extracted from the adjudged cases is, that where the conveyance is absolute, the want of a change of possession is not merely *prima facie* evidence of fraud, but is a circumstance, *per se*, which renders the transaction fraudulent and void.

In *Twine's* case, 3 *Co.* 80, an assignment of goods was held fraudulent and void, although there was a prior debt and a good consideration, as between the parties, because, amongst other reasons, the donor *continued in possession* and used them as his own. A similar case is stated in *Shep. Touch.* 66, and the sale said to be void for the same reason. Although these cases were attended with several other circumstances of fraud, yet they seem clearly to establish the principle, that a sale, unaccompanied with possession, is in judgment of law fraudulent. Such appears to have been the doctrine of Lord Coke, in *Stone* vs. *Grubham*, 2 *Bulst.* 222. He there says, "an absolute conveyance, and a *continuance in possession* afterwards, shall be adjudged in law fraudulent." And in *Bucknal* vs. *Royston, Prec. in Chan.* 287, Sir *Edward Northey* said, it had been ruled forty times in his experience, at Guildhall, that if a man sells goods, and continues in possession as visible owner, it is fraudulent and void as to creditors, and that it had always been so held. *Viner* refers to these and other cases as settling the principle, and adopts it as established law. (13 *Vin. Abr.* 516.) In *Edwards* vs. *Harben*, 2 *T. Rep.* 587, the principle is laid down in the most distinct and explicit terms. The court said, that they had consulted with all the judges, who were unanimously of opinion, that unless possession accompanies and follows the deed, it is fraudulent and void; that the point they had considered was, whether the want of possession was only evidence of fraud, or was such a circumstance *per se*, as made the transaction fraudulent in point of

Franklin,
January,
1826.

Weeks
vs.
Wead.

law, and they were all of opinion, that if there was nothing but the absolute conveyance, that, in point of law, was fraudulent. It has since been frequently ruled at *Nisi Prius*, that where goods have been suffered to remain with the vendor, and to be used as his own, the sale is fraudulent in law. It was so held in the cases of *Paget* vs. *Puchard*, 1 *Esp. Cas.* 205, and *Wardell* vs. *Smith*, 1 *Campb. Cas.* 202; and in the latter case, Lord *Ellenborough* held, that the possession of the vendee must be exclusive and entire, and that a joint or concurrent possession with the vendor would not avail.

The principle has received the sanction of some of the ablest lawyers, and been recognized and adopted as a rule of decision by some of the most enlightened courts, in this country. In *Dawes* vs. *Cope*, 4 *Binn.* 258, *Tilghman*, Ch. J. says, "the general principle with regard to the assignment of personal chattels, is, that where the deed contains an absolute immediate assignment, it is necessary that the possession should accompany and follow it, otherwise it will be fraudulent under the statute of 13 *Eliz.* and, indeed, at common law." In *Hamilton* vs. *Russell*, 1 *Cranch*, 309, the Supreme Court of the United States adopted the principle in the fullest extent. *Marshall*, Ch. J. says, "in some cases, a sale of a chattel, unaccompanied by the delivery of possession, appears to have been considered as an evidence or badge of fraud, to be submitted to the jury, under the direction of the court, and not as constituting in itself, in point of law, an actual fraud, which rendered the transaction, as to creditors, entirely void. Modern decisions have taken this question up upon principle, and have determined, that an unconditional sale, where the possession does not accompany and follow the deed, is, with respect to creditors, on the sound construction of the statute of *Eliz.* a fraud, and should be so determined by the court." And, after stating the case of *Edwards* vs. *Harben*, he adds, "this court is of the same opinion. We think the intent of the statute is best promoted by that construction, and that fraudulent conveyances, which are made to secure to a debtor a beneficial interest, while his property is protected from his creditors, will be most effectually prevented, by declaring that an absolute bill of sale is, of itself, a fraud, unless possession accompanies and follows the deed." In *Sturtevant* vs. *Ballard*, 9 *Johns. Rep.* 337, *Kent*, Ch. J. is equally explicit on the subject. After remarking that if the sale, in that case, had been absolute on the face of it, and possession had not immediately accompanied and followed the sale, it would have been fraudulent as againts creditors, he proceeds to say, "and the fraud, in such case, would have been an inference or conclusion of law, which the court would have been bound to pronounce. This is a well settled principle in the English courts. It is to be met with in a variety of cases, and especially in that of *Edwards* vs. *Harben*, and it has been recognized and adopted by some of the most respectable tribunals in this country." Judge *Swift*, in his late valuable work, speaks of the principle as one which is perfectly well settled.

Franklin,
January,
1826.

Weeks
vs.
Wead.

In remarking upon the case of *Brooks* vs. *Powers*, 15 *Mass.* 244, where it was held, that the possession of the vendor, after an absolute sale of personal chattels, is not conclusive evidence of fraud, he says, "this decision is opposed to the whole current of authorities, and if recognized, would enable every debtor to make a secret conveyance of his property, and retain the possession of it against his creditors, and almost entirely defeat the beneficial operation of the statute against fraudulent conveyances."—1 *Swift's Dig.* 269.

These decisions and opinions form an accumulation of authority, which would seem to be altogether sufficient to establish the rule, that where the conveyance is absolute, the possession must accompany and follow the sale, unless the nature and circumstances of the property itself prevent an immediate delivery, as in the sale of a ship or goods at sea, or the sale will be fraudulent and void. It is not to be understood, however, that the rule which requires a change of possession, is confined to those cases only, where the conveyance is absolute in terms, and the vendee is entitled to immediate possession from the stipulations in the deed itself. Although the language of the cases may seem to import an exception, generally, of all sales not absolute and unconditional, yet the sales spoken of and intended as exceptions to the rule, are such only as make the possession consistent with the deed. Such was the case of *Cadogan* vs. *Kennet, Camp.* 432. There, a husband, before his marriage, having conveyed to trustees, all his household goods, to the use of himself for life, to his wife for life, remainder to the first and other sons of the marriage, in strict settlement, it was held, that the possession of the husband was not fraudulent against a creditor whose debt existed at the time of the settlement, because the possession was in pursuance and in execution of the trust, and so consistent with the deed. All the cases of marriage settlements, and assignments of goods in trust for the wife, are of the same nature, and rest upon the same principle. (*Haselington* vs. *Gill*, 3 *T. Rep.* 620 n. *Cross* vs. *Glode*, 2 *Esp. Cas.* 574.----*Lady Arundle* vs. *Phipps*, 10 *Ves.* 150.) But an assignment of goods, with condition that possession shall not be taken till forfeited, or the insertion of a clause in a bill of sale, where the sale is otherwise absolute, that the vendor shall remain in possession, will not make his possession consistent with the deed, or take the case out of the rule. In *Ryall* vs. *Rolle*, 1 *Atk.* 167, Mr. Justice *Burnet* said, that the continuance of the debtor in possession of goods mortgaged, made the conveyance fraudulent at common law, and that the 13 *Eliz.* provided against it that it should be void. And in the case before cited of *Sturtevant* vs. *Ballard*, it was determined, that a sale of chattels, specified in the bill of sale to be for the consideration of a certain sum of money, and also that the vendor should have the use and occupation of them for the space of three months, being unattended with possession, was in judgment of law fraudulent and void. In such cases, the reason of the law requires a change of possession, as much as in the case

*Weeks
vs
Wead.*

of sales formally and strictly absolute, and no distinction exists, or can be recognized between the respective cases in this res‑ pect. If the mere insertion of a clause in the bill of sale, cre‑ ating a condition, or a stipulation in the contract of sale, that the vendor shall remain in possession, will, of itself, take the case out of the rule, which requires a change of possession, it will always be in the power of the parties to evade the operation of the rule, and it will cease to have any effect. The form of the conveyance can make no difference, if from the nature of the transaction, the sale is absolute, and possession can accom‑ pany it.

Indeed, the rule appears to apply to all cases, except where the purpose of the conveyance and the nature of the transaction entitle or require the vendor to continue in possession, and the law, considering it necessary and justifiable, approves and per‑ mits it. There are certain special cases in which a change of possession has been dispensed with, and which, from their pe‑ culiar character have been treated and admitted as exceptions to the general rule. Such is the case of a loan of money to buy goods, and a sale in the nature of a mortgage or security for the loan, as *Maggott* vs. *Mills,* 1 *Ld. Raym.* 286 ; and the case of a purchase at a sheriff's sale, and leaving the goods in the possession of the judgment debtor, out of benevolence, and for a temporary and honest purpose, as *Cole* vs. *Davis,* 1 *Ld. Raym.* 724, and *Kyd* vs. *Rawlinson,* 2 *Boss. & Pull.* 59. To these may be added the case of *Bucknal* vs. *Royston, Prec. in Chan.* 285, where goods on board of a ship, going on a voyage, and the produce and advantage which should be made of them, were sold as security for the repayment of money lent by the vendee, and the vendor, be‑ ing the supercargo of the ship, was entrusted with the possession of the goods, to negociate and sell them for the advantage of the vendee. On the special circumstances of the case, the possession necessarily arising out of the nature of the transaction between the parties, they having in view an honest purpose, and the trust appearing upon the face of the bill of sale, the conveyance was held valid.

Except in instances coming within some of the exceptions stated, the rule appears to be invariable, that the continuance of the vendor in possession as visible owner, does, of itself, render the sale fraudulent in construction of law, and void as to creditors. The case of *Manton* vs. *Moore,* 7 *T. Rep.* 63, where the particular situation of the goods in question was held to supersede the necessity of an actual delivery, does not at all in‑ terfere with the rule. There the vendor having procured the goods, which were materials of bulk, with money advanced to him by a canal company, and deposited them on the banks of the canal, for the purpose of being used by him as engineer in the employment of the company, afterwards executed a bill of sale of them to the company, delivering a half-penny in the name of the possession of the materials. It was held, that as the goods were on the premises of the company, and apparently in their

*Franklin,*
January,
1826.

Weeks
*vs.*
· Wead.

possession before the bill of sale was executed, no other possession was necessary, or could have been given; and that the vendor having had no possession of the goods, otherwise than as he had the property in them, when he transferred that property to the company, the law referred the possession to the company, who had the property, and in whom the possession, apparently, was before.    The decision proceeds expressly upon the ground, that the possession was in the vendees, and therefore accompanied and followed the sale.   It was expressly stated by Lord Kenyon, as a principle well understood and established, that a conveyance of goods, by or without deed, is fraudulent and void, unless possession of the goods be given.

We are aware, that the law is settled otherwise in Massachusetts, and that very recently in New-York, and also in Connecticut, decisions have been made by the courts of those states, adverse to previous determinations, and adopting the principle, that the want of a change of possession is to be regarded only as evidence or a badge of fraud, to be submitted to the jury. These decisions are opposed by others in this country of at least equal weight and authority, and we have already seen that the English cases on the subject are the other way.   The weight of authority, therefore, appears to be in favour of the rule which has prevailed in this state; and on principle and policy, as well as authority, we should be inclined to follow this rule, as better fitted to prevent fraud and litigation, promote justice, and preserve morality and honesty in dealing.   "The law," says Chief Justice Kent, "in every period of its history, has spoken a uniform language, and has always looked with great jealousy upon a sale or appropriation of goods, without parting with the possession, because it forms so easy and so fruitful a source of deception."   The object of every fraudulent conveyance is to secure a benefit to the debtor; and this benefit is usually the possession and enjoyment of the property.   If the possession cannot be retained, one of the leading and most common motives to a fraudulent conveyance, will cease to exist; and the instances of this species of fraud must consequently be comparatively diminished, and its mischievous and demoralizing effects less frequently felt in the community.   If the retention of the possession is to be regarded only as presumptive evidence of fraud, liable to be removed by proof that the sale was *bona fide* and for a valuable consideration, and that the possession of the vendor was in pursuance of an agreement not inconsistent with honesty in the transaction, it is very obvious, that the expedients of the parties will always enable them to furnish this evidence, and to give to the transaction such an appearance of fairness, that it will be difficult, if not impracticable, in the great majority of cases, to detect and expose the vice which lays concealed within it.   Such a principle must necessarily be productive of great litigation and uncertainty at the best, and, considering the facility it affords to the practice of fraud, would, in our apprehension, be an unsafe and unsatisfactory ground to proceed upon.

*Franklin,*
*January,*
*1826.*

Weeks
*vs.*
Wead.

It is also to be observed, that where a man, who is known to have owned personal chattels, still continues in the visible possession and use of them, the world will consider, and act upon the belief, that he is the owner. A continuance in possession, therefore, after a conveyance, has a direct tendency to mislead and deceive; and a change of possession is necessary, to prevent fraud and deceit in this respect, as well as to prevent sales actually fraudulent. The rule which requires it, is not unreasonable in itself, and need never operate to the injury of a *bona fide* purchaser; for he may always consummate his right by taking possession; and if he neglects to do it, his loss, like that of every person who suffers from inattention to his interests, will be the consequence of his own negligence, of which he cannot complain.

Applying the principle thus adopted, to the case before us, it is very clear, that the direction to the jury, in the court below, was not such as the merits of the case required, and the court were requested and bound to give. From the facts stated in the bill of exceptions, it appears, that from the sale of the horse to the plaintiff below, to the time of his being seized upon the creditor's execution, which was about ten months, Freeman, the vendor and judgment debtor, had the actual possession and use of the horse, except for the space of eight or ten days immediately after the sale, during which time the plaintiff had the possession of the horse, but Freeman received the benefit of his service. From these facts, about which there appears to have been no dispute, the possession and use of the horse remained the same after as before the sale; and the jury should have been explicitly instructed, that the sale being unaccompanied with any visible alteration of the possession, it was fraudulent and void, and did not change the property, as it respected the creditor of Freeman. This instruction not having been given, the judgment is erroneous, and must be reversed.

Judgment reversed.

*Asa Aldis, James Davis* and *Seth Wetmore,* for the plaintiff in error.

*Benj. Swift* and *John Smith,* for the defendant in error.