*Essex,*
*March,*
*1833.*

Holbrook
*vs.*
Bl)dgot.

---

WILLIAM FULLER Jr. vs. SEARS & CLEMENT.

ORLEANS,
*March,*
*1833.*

Where the plaintiff is not permitted to prove, that the defendants' action, other than the one on trial, had no merits.

A fraud in fact may exist in the sale of goods, although the purchaser pays full value, and receives possession.

A sale of goods *bona fide*, and at the same time *a fraud in law*, explained.

Fraud *in fact*, and fraud *in law* are often interwoven ; and when it is so, if the plaintiff prove *fraud in law*, it may be sufficient to entitle him to recover, without showing fraud *in fact*.

Fraud *in law* means, that the sale is *inoperative*, and *void* as to the creditors of the vendor.

This was an action of trespass, for taking and driving away a yoke of oxen, claimed by the plaintiff.   Defendants plead the General Issue, and gave notice that the oxen were taken on legal process as the property of John Fuller.   Issue joined to the country, and tried June Term, 1832.   The plaintiff gave evidence tending to show that his brother John Fuller, in the Spring of 1831, hired a farm of his father, William Fuller, for a year, then next ; and bought the oxen in question, of Roger Enos, and gave his note to said Enos, to pay him $75,50, for said oxen ; that said John Fuller kept said oxen with his other cattle

ORLEANS,
March,
1833.

Fuller, jr.
vs.
Sears & al.

on said farm as long as he occupied. That said John rais-ed upon the farm that season eight or ten tons of hay; forty bushels of wheat and corn, and two hundred bushels of potatoes. (Plaintiff cut some hay on said farm upon shares as agreed between him and John) After securing the crops, the said John concluded he would quit the farm, and in the fall of that year sold said oxen, and crops to the plaintiff, and in part pay for the same, the plaintiff let the said John have a mare at the price of sixty dollars, and thirty dollars in cash; and thereupon the said John gave the plaintiff sole, and exclusive possession of said farm, ox-en, and crops, and went a journey. The defendants im-mediately after, finding said oxen on said farm, attached the same, as the property of the said John.

The defendants gave evidence tending to prove, that af-ter said oxen were attached, they went back into the hands of said Enos, who accounted and paid the plaintiff for said oxen the sum that said John agreed to give for said oxen; and said Enos now owns said oxen. The defend-ants also gave in evidence the writs of attachment describ-ed in their notice. The plaintiff then offered to prove, that said Clement had no merits in his said action, which he commenced against said John. This evidence was ob-jected to, and the Court excluded the same.

The Court charged the jury to consider whether the sale of the oxen from John Fuller to the plaintiff, was fraudu-lent in fact, or law. If the jury found that John Fuller wish-ed to leave the State to avoid, or delay his creditors, and the plaintiff knew it, and purchased all his personal proper-ty at prices agreed on, and let him have a horse and thirty dollars in cash to enable him to abscond, it was a fraud *in fact*, and as it respected John's *creditors* the sale was void, and the oxen, hay, grain, and potatoes were liable to be taken for John's *debts*.

So if the jury found the sale of the oxen was *bona fide*, and the possession did not follow the sale, it was a fraud in law, and the *creditors* of John might attach the oxen as his.

If the sale of the oxen was fraudulent in fact, or in law, it was the duty of the jury to find for the defeodants. Or, at any rate, the jury could find only nominal damages for

the plaintiff, if they found that the plaintiff had sold and received his pay for the oxen, as testified by Enos.

ORLEANS.
March,
1833.

Fuller, jr.
vs.
Sears & al.

Also at the request of the plaintiff, the Court charged, that if the jury found, that the plaintiff was in open possession of the farm, when he bought the oxen, and they were attached ; the oxen remaining on the farm must be considered in the possession of the plaintiff, and it was not a fraud in law.

The jury returned a verdict for the defendants to recover their costs. Plaintiff excepts, .&c. which exceptions were duly allowed by the County Court.

The opinion of the Court was pronounced by

BAYLIES, J.—The first enquiry is, was it admissible for the plaintiff to prove, "that the said Clement had *no merits* in his said action, which he commenced against the said John." It would have been a novelty to have tried the *merits* of that action in this suit. It cannot be supposed, that the defendants came to Court with an expectation to go into a trial of that action to ascertain, whether it had *merits*, or not. The law required no such thing. It was sufficient, if said Clement was a creditor of said John, *prima facie*, without his showing the amount that was due. The County Court in their charge, told the jury, "if they found *that* John Fuller wished to leave the State to avoid, or delay his creditors, and the plaintiff *knew* it, and purchased all his personal property at prices agreed on, and let him have a horse, and thirty dollars in cash to enable him to abscond, it was a fraud *in fact*, and as it respected John's creditors, the sale was void, and the oxen, hay, grain, and potatoes were liable to be taken for John's debts." A transaction like this, is clearly within the letter, and spirit of our act, Chap. 32, sec. 7, which says, " That all fraudulent, and deceitful conveyances of goods or chattles, and all bonds, bills, notes, contracts, and agreements, and all suits, judgements and executions, made or had, to avoid any right, debt, or duty of others, shall, as against the party or parties, only, whose right, debt, or duty is endeavoured to be avoided, their heirs, executors, administrators, or assigns, be utterly null and void, and any false pretence, or feigned consideration to the contra-

67

Fuller, jr.
*vs.*
Sears & al.

ry notwithstanding." This act has the substance of 13 Eliz. c. 5, which says "that no act whatever, done to defraud a creditor òr creditors, shall be of any effect against such creditors." On this clause of the Statute, in the case of *Codogan* vs. *Kennett*, Cowper, 434, Lord Mansfield says, "If the transactions be not *bona fide*, the circumstance of its being done for a *valuable consideration*, will not alone take it out of the statute. I have known several cases, where persons have given a fair and full price for goods, and where the *possession* was *actually changed;* yet being done for the purpose of defeating creditors, the transaction has been held fraudulent, and there-fore void."

"One case was where there had been a decree in the Court of Chancery, and a sequestration. A person with knowledge of the decree, bought the house, and goods belonging to the defendant, and gave a full price for them. The Court said, the purchase being with a manifest view to defeat the creditor, was fraudulent; and therefore, notwithstanding a valuable consideration, was void." "So if a man knows of a judgement, and execution, and, with a view to defeat it, purchases the debtor's goods, it is void, because the *purpose* is *iniquitous.* It is assisting one man to cheat another, which the law will never allow." These observations upon the 13 Eliz. c. 5, justify the County Court in their remarks, upon what would be a *fraud in fact*, within our statute. So this part of the charge derives support from the case of *Edgell* vs. *Lowell & Bennett*, 4 Vt. Rep. 405.

The Court also charged the jury, "if they found the sale of the oxen was *bona fide*, and the possession did not follow the sale, it was a *fraud in law*, and the creditors of John might attach the oxen as his."

It may not be easy to understand, how the sale could be *bona fide*, and at the same time a *fraud in law*. But I suppose the meaning of the County Court was, that if the vendor. at the time of sale, had no intention to defraud his creditors, and sold his oxen at a fair price, and . received his pay—also, if the vendee did not intend to injure any body by making the purchase, and paying his money for the oxen; then both vendor and vendee had good inten-

tions, and acted *bona fide* in entering into the contract.— But as the oxen did not accompany, and follow the sale, it rendered the contract *inoperative* and *void*, as to the creditors of the vendor; or in other words, created that state of things, which is denominated a *fraud in law*. It *seems* to be settled in this State, that an absolute unconditional sale of goods, under circumstances admitting of immediate delivery of possession, if the possession does not accompany, and follow the sale, the conveyance is fraudulent *per se*, and void as to creditors: leaving the possession of the goods in the hands of the vendor, operates as a deceit, and fraud upon his creditors, and vitiates the sale. *Mott* vs. *McNiel*, 1 Aik. 162; *Weeks* vs. *Wead*, 2 Aik. 64. The same principles are recognized as law by the Court of K. B. England, in the case of *Edwards* vs. *Harbin Ex*. 2 T. R. 587. Also by the Supreme Court of the United States, in the case of *Hamilton* vs. *Russel*, 1 Cranch, 309.

Fraud *in fact*, and fraud *in law*, are often interwoven with each other: When this is the case, it is not necessary to enquire after the *fraudulent intent* of the parties to the contract; but simply, whether the goods remained in the possession of the vendor after sale. This fact is easily proved, while the *fraudulent intent* is dexterously concealed. If the vendor remained in possession of the goods after sale, and no good reason can be assigned why it was so; this of itself is sufficient to render the sale inoperative, and void as to creditors. The charge says "if the sale of the oxen was fraudulent *in fact*, or *in law*, it was the duty of the jury to find for the defendants." This cannot be disputed. So the charge says, "At any rate the jury would find only nominal damages for the plaintiff, if they found that the plaintiff had sold, and received his pay for the oxen as testified by Enos." This part of the charge could have no influence upon the minds of the jury, in as much as they had no occasion to assess the damages, but found for the defendants their costs.

Judgement is affirmed.

*Story*, for plaintiff.
*Cooper*, for defendant.