CATHERINE A. ATKINS' EXECUTRIX *v.* GEORGE ATKINS AND
MORRIS ATKINS.

May Term, 1911.

Present:   ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 19, 1914.

*Wills — Construction —Estate   Devised —"Remainder" —"Ex-*
*ecutory   Devise"—"Conditional   Limitation"—Waiver   of*
*Breath   of   Condition — Conditions —Forfeiture —Relief—*
*Actions   Between   Devisees   and   Legatees—Findings—Suffi-*
*ciency—Evidence —Admissibility —Ejectment —Demand—*
*Allowances.*

A remainder is an estate in lands which is so limited as to be imme-
diately expectant on the *natural* termination of a particular estate
of freehold limited by the same instrument; but, when the event
that gives birth to the ulterior limitation abruptly determines the
preceding estate, the limitation is executory and not a remainder.
An executory devise is a limitation by will of a future estate or inter-
est in land, which under the rules of the common law cannot take
effect as a remainder.
Every devise of a future interest in land, which is not preceded by an
estate of freehold created by the same will, or which, being so
preceded, is limited to take effect before or after,. and not at, the
expiration of the preceding estate of freehold, is an executory
devise.
Where a testator devised real estate for life, upon condition that if his
two daughters should come to want and the devisees should fail to
make suitable provision for them, then the estate should "revert"
to the daughters, the latter took an executory devise, and not a
remainder, the preceding estate not being left to expire of its own
natural limitation, but being terminated by the happening of the
condition.
There is a distinction as regards the requirement of entry between
an estate upon condition and a conditional limitation, for in the
case of a conditional limitation the prior estate is determined, with-

out entry, by the mere happening of the event by which its limitation is measured, while an actual entry is necessary to determine an estate held upon condition; and a limitation over upon the happening of a condition subsequent is a conditional limitation, and no entry is necessary.

Where a testator devised real estate upon condition that, if his two daughters should come to want, and the devisees should fail to make suitable provision for them the estate should "revert" to the daughters, the question whether a daughter came to want within the meaning of the will involves both the construction of that instrument and a finding of facts.

A finding of the trial court which involves a conclusion of law does not relieve the Supreme Court from an examination of the facts reported.

It is not necessary that the last article be sold or the last dollar be expended before a person can be said to have "come to want" within the meaning of an executory device, conditioned on that event.

Findings that a beneficiary under a will was in a continued state of want, and of repeated applications for her support to a life tenant charged under the will therewith, are sufficient to show that the life tenant failed to furnish suitable support.

Waiver of breach of a condition subsequent, being matter of intention, is ordinarily a question of fact.

Where the record does not show that estoppel to assert a breach of a condition was either pleaded or relied upon below it will not be considered on review.

A conditional limitation, whether created by will or deed, is imperative and is determined by the rules of law, while a condition is controlled by equity, if an inequitable use of it is attempted.

An executory devise to a person ascertained can be released at any time before the happening the contingency on which it depends, and so the devisee may be estopped by conduct to claim it.

Where a testator devised real estate for life, but made the support of his daughter, in case she should come to want, a charge thereon, and provided that, if in that event the devisees failed to make suitable provision for her, the real estate should vest in her, the fact that the daughter came to want within the meaning of the will, and the devisees thereupon failed to make suitable provision for her so that the title passed to her by conditional limitation, will not preclude a court of equity from releasing the devisees from

the forfeiture, where it would be inequitable for the daughter to assert her rights because she accepted as sufficient the support actually furnished by the devisees, for her equitable rights in those circumstances are to be determined by the rules applicable in ordinary cases of condition broken.

A court of equity will grant relief from a forfeiture incurred by the nonpayment of money, unless the party has debarred himself from relief by inequitable conduct, and the application of that rule to cases of nonsupport will not be denied on the theory that the loss of support is not susceptible of compensation.

Any error in the admission of oral evidence as to statements in certain letters reciting material facts was harmless to defendants, where they in no way questioned the truth of the recited facts.

Where objectionable evidence was stricken out on motion of defendants, any error in its admission was harmless to them.

In ejectment for real estate devised to defendants, but claimed as the property of plaintiff's testatrix because of a breach of a condition subsequent providing for the support of plaintiff's testatrix by defendants, a bill in equity by plaintiff's testatrix against defendants, alleging her condition of want and defendants' failure to support her, and praying that the estate be decreed to her under the terms of the will, was admissible in evidence to show that thereby defendants were informed of the matters of which complaint is therein made.

Error does not appear in the admission in evidence of a document the contents of which the record does not disclose.

On the issue whether plaintiff's testatrix had "come to want," within the meaning of her father's will, testimony of her attending physician that at the time of her death she was owing him a designated sum was admissible in connection with other evidence as to her financial condition, as was also testimony of her attending nurse that she had loaned testatrix money at different times.

On the issue whether plaintiff's testatrix had "come to want," within the meaning of her father's will, where her attending nurse had testified fully regarding testatrix's physical condition, her requirements as to nursing, her expenditures in that regard, and her manner of living, it was proper to allow the witness further to testify that, during the time she attended testatrix, the latter's income was insufficient to provide her with necessaries.

In ejectment, the written demand for possession, which was delivered to defendants just before the writ was served, and while the sheriff

was present with the writ in his pocket, was seasonably delivered, for suit is not begun till the writ is served.

In ejectment, defendants in possession have the burden of showing the amount of taxes and repairs for which they claim an allowance.

EJECTMENT. Plea, the general issue. Trial by court at the March Term, 1909, Washington County, *Stanton,* J., presiding. Judgment for the plaintiff to recover the seisin and possession of an undivided half of the premises described in the declaration, $4,158.84, damages, and her costs. The defendant excepted. The opinion states the case.

*Stickney, Sargent, Skeels & Moore* for the defendants.

A forfeiture may be waived by conduct of the party otherwise entitled to insist thereon, as was done by the testatrix. *Willard* v. *Henry,* 2 N. H. 120; *Hamilton* v. *Elliott,* 5 S. & R. 375; *Andrews* v. *Senter,* 32 Me. 394; *Hubbard* v. *Hubbard,* 97 Mass. 188; 16 Gray 309; 118 Mass. 123.

*Cowles, Moulton & Stearns, March M. Wilson, Fred L. Laird* and *John W. Gordon* for the plaintiff.

Plaintiff's testatrix took an estate in fee by way of executory devise, because the designated event determined and broke of the prior estate. Fearne, Executory Devises, 17; 1 Spence, Eq. Juris. 470; Greenleaf's Cruise's Dig., Chap. XVII, p. 451; II Black. Comm., 172 bb.; 1 Eq. Cas. Abr. 186-8; *Pells* v. *Brown,* Cro. Jac. 590; *Bate* v. *Amherst,* T. Rayd. 82; *Eastman* v. *Baker,* 1 Taunt. 174; *Doe* v. *Heneage,* 4 T. R. 13; *Carr* v. *Earl of Erroll,* 6 East. 57; *Doe* v. *Beauclerk,* 11 East. 657; *Nicholls* v. *Nicholls,* 2 Bro. C. C. 215; *Thellusson* v. *Woodford,* 4 Ves. Jr. 227; *Stanley* v. *Stanley,* 16 Ves. Jr. 491; *Nichol* v. *Nichol,* 2 W. Bl. 1159; *Marks* v. *Marks,* 10 Mod. 418; *Barnitz's Lessee* v. *Casey,* 7 Cranch. 456; *Calvin* v. *Springer,* 28 Ind. App. 442, 63 N. E. 40; *Conger* v. *Lowe,* 124 Ind. 368, 9 L. R. A. 165; *Chambers* v. *Wilson,* 2 Watts. (Pa.) 495; *Jessup* v. *Smuck,* 16 Penn. 327; *Nightingale* v. *Burrell,* 15 Pick. 104; *Nicholson* v. *Butte,* 57 Penn. 384; *Ryan* v. *Monaghan,* 99 Tenn. 338; and the estate vested immediately without the necessity of an entry. Digby History of Real Property, (2 Ed.) 328 ff.; 346 ff. I Spence Eq. Juris., 470-

471; II Blackstone Comm., 334; Williams, Real Property, (17 Ed.) c. III, pp. 433 ff.; 2 Blackstone Comm., 155; 4 Kent Comm., (14th Ed.) 249-250; *Scatterwood* v. *Edge*, 1 Salk. 229; 12 Mod. 273; *Mary Portington's Case*, 10 Rep. 35, 40; *Bryan* v. *Spires*, 3 Brewster, (Pa.) 583; *Hoselton et al.* v. *Hoselton*, 166 Mo. 183, 65 S. W. 1005; *Atty. General* v. *Merrimac Mfg. Co*, 14 Gray, 586, 612; *Guild* v. *Richards*, 16 Gray, 309; *Smith* v. *White*, 5 Neb. 405, 407.

MUNSON, J. This is an action of ejectment, brought by the plaintiff as executrix of the will of Catherine A. Atkins. a devisee under the will of Hiram Atkins late of Montpelier, to recover an undivided half of certain premises in Montpelier known as the Argus & Patriot block.

The will of Hiram Atkins gave a life use of the testator's share of the Argus & Patriot realty, and of the personal property used there, to George Atkins and Morris Atkins and the survivor of them, and the reversion thereof to the testator's children or grandchildren. The will made Alfred Atkins and George Atkins trustees of certain funds, the income of which was to be paid to the testator's daughters, Catherine A. Atkins and Elizabeth De Witt Clark, and to the survivor of them. Further provisions of the will were as follows: "It is my will that in case my two daughters hereinbefore mentioned or either of them shall come to want said trustees hereinbefore mentioned may pay out for them and their benefit any portion of the principal sums hereinbefore specified and directed to be left in the hands of said trustees, and if after such expenditure they or either of my said daughters shall be still in want then I make their support and maintenance a charge and lien upon the Argus & Patriot building and real estate and the business carried on there. And the said George and Morris are hereby required to make suitable provision for the support of my said daughters in case my said daughters come to want, and in case of their failure to make such provision under such circumstances then said Argus & Patriot property and business including all the real and personal property connected therewith shall at once revert to my said daughters or the survivor of them after the decease of either."

The case was tried by the court, and the following are among the facts found. Catherine A. Atkins lived in Burling-

ton most of the time from April, 1895, until her death in February, 1904. During all this time her health was very poor as the result of an incurable disease, and the expenses necessarily attendant upon her illness were great. She owned some real estate in Burlington, and from time to time received money from her father's estate. Her real estate became involved in complications; her agent in charge of the business proved dishonest; and her entire interest was eventually lost. She brought a suit against Alfred Atkins and George Atkins to recover the avails of certain insurance on her father's life collected and held by them, and prevailed in the litigation; but there was an offset for money advanced her which reduced the amount about one-half. In October, 1901, she placed $1,000 in the hands of her attorney to be held as a fund for the use and benefit of an adopted daughter, but much of this was paid back to her as her illness progressed, and a few months after her death the remainder of it, being $356.62, was paid to this plaintiff as executrix of Catherine's will. Alfred and George, the trustees aforesaid, made an unsuccessful attempt at one time to have Catherine put under guardianship. During the period above named she paid out about $2,000 in counsel fees. For a considerable time previous to her death, Catherine received from George Atkins under the provisions of the will a monthly payment of not less than $50. Repeated demands were made on George and Morris for more funds, and for a few months these payments seem to have been increased to $75. A few days before her death she received an additional payment of $200, the circumstances of which will be given later. At various times within the period stated, Catherine was unable from lack of money to have the things she needed. A considerable part of the time she was destitute of proper clothing. She did not always have food suitable for one in her condition. At times she was unable to procure fuel enough to heat her house properly. Towards the end of her life she needed a trained nurse, but was unable to have one. At her death she was owing the plaintiff over $200 for her personal services, and was in debt to other parties. The court concludes its findings on this subject in these words: "While it may be true that a more prudent and thoughtful management of her property and a more careful attention to its details would have resulted in there being funds sufficient for her proper care and maintenance, it is also true

that under the conditions as they existed Catherine A. Atkins in her lifetime came to want within the meaning of the terms of her father's will. The court finds that she came to want as aforesaid March 1, 1902, and so continued up to the date of her death.''

In November, 1903, Catherine brought a bill in equity against Alfred Atkins, George Atkins and Morris Atkins, setting up her condition of want, and praying for a decree that the Argus & Patriot property, as described, had become the sole property of the oratrix and her sister Elizabeth De Witt Clark, and that George Atkins and Morris Atkins be foreclosed of all right and title therein under the will. After the bill was served there was a conference between Mr. C. G. Austin representing Miss Atkins, and Mr. W. B. C. Stickney representing the defendants George and Morris, in which Mr. Austin said that Miss Atkins was in needy circumstances and must have some money, and Mr. Stickney asked him how much was needed. After some consideration Mr. Austin said that if. they could have $200 ''it would fix matters up all right then,'' and Mr. Stickney thereupon gave Mr. Austin a check for $200 and this was delivered to Miss Atkins and was used by her. This is the $200 before referred to as received by Miss Atkins a few days before her death. All the sums paid to Catherine by these defendants were paid because the support of Catherine and her sister was made a charge on the Argus & Patriot property.

It is stated in the findings, upon an agreement of counsel, that all the trust funds set apart for the benefit of the daughters have been paid to them by the trustees, and that all the moneys so paid, except such as remained in the hands of Catherine as shown in the findings, were used up several years before Catherine's death, and that since that time Elizabeth has been supported by the defendants. The rental value of the real estate is placed at $968.

The plaintiff argues that her testatrix took an estate in fee simple by way of executory devise; that the happening of the contingency at once terminated the life estate of the defendants; that the estate thereupon immediately vested in the plaintiff's testatrix without the necessity of entry or claim; and that she could not part with her title thereto otherwise than by deed.

The defendants do not designate in terms the interest taken by the two daughters; but they insist that the claim that the

condition operated without any action on the part of Catherine is untenable upon the case presented; that nothing short of an actual entry will defeat an estate upon a condition which has been broken; that the acts of Catherine were a waiver of the breach of condition, and such as will estop the plaintiff from claiming a forfeiture; and that it is immaterial whether the forfeiture insisted upon here is owing to a breach of a condition subsequent, or a result of the expiration of the life estate of the defendants by limitation.

"An executory devise is a limitation by will of a future estate or interest in land, which cannot, consistently with the rules of law, take effect as a remainder." If a devise is capable of taking effect as a remainder, under the conditions existing at the death of the testator, it is not to be construed as an executory devise. A remainder is an estate which is so limited as to be immediately expectant on the natural determination of a particular estate of freehold, limited by the same instrument. "When the event which gives birth to the ulterior limitation abruptly determines and breaks off the preceding estate, the limitation is executory, inasmuch as it is essential to the constitution of a remainder that it wait for the regular expiration of such estate." It follows that every devise of a future interest which is not preceded by an estate of freehold created by the same will, or which, being so preceded, is limited to take effect before or after, and not at, the expiration of such prior estate of freehold, is an executory devise. 2 Jarm. Wills, 5 Am. ed. 483-4; Fearne, Executory Devises, 17 et seq.; 2 Wash. Real Prop., *344.

The interest given the two daughters could not be a remainder, for it was not limited to take effect on the determination of the preceding estate of freehold. It did not leave the preceding estate to expire by its own limitation, but intervened to supersede and destroy it. It is the manifest purport of the will that the term of the preceding estate shall be determined by the contingency upon which the future interest depends, if that contingency is suffered to occur; and the provision must therefore be classed as an executory devise. See *Randall* v. *Josselyn,* 59 Vt. 557, 563, 10 Atl. 577.

The plaintiff argues that an executory devise is always a contingent limitation, and that this estate vested in the two daughters upon the happening of the contingency without any

entry or claim being made; while the defendants rely upon the general proposition that an actual entry is necessary to determine an estate held upon condition. As regards the matter of entry, a distinction is made between a condition and a limitation. A condition determines the estate after breach, upon entry by the person next entitled. A limitation determines the estate without an entry. If a condition subsequent is followed by a limitation over upon a breach of the condition, it is termed a conditional limitation. *Brattle Square Church* v. *Grant*, 3 Gray, 142, 63 Am. Dec. 725. So an estate upon condition and a conditional limitation are not the same, although the estate is a conditional one in either case. In the case of a conditional limitation the estate is determined by the mere happening of the event by which its limitation is measured. An estate upon condition, although liable to be defeated, is not in fact determined until he who has the right to avail himself of the condition enters and determines it. 1 Wash. Real Prop., *457, 462.

No distinction can be made between executory devises and other conditional limitations as regards the passing of the title without entry. Executory devises; shifting uses and conditional limitations are essentially the same. It is said by Mr. Washburn that conditional limitations are in fact shifting or secondary uses, which, when created by will, take the name of executory devises. 2 Wash. Real Prop., *289.

It was said by plaintiff's counsel in oral argument that the finding that Catherine "came to want" precludes all further discussion. To this we cannot agree. The question was whether Catherine came to want within the requirement of the will, ascertained in accordance with legal rules. The conclusion of the court below involved a construction of the will as well as a finding of fact. *McKeough's Est.* v. *McKeough*, 69 Vt. 41, 37 Atl. 275. A finding which involves a conclusion of law does not relieve this Court from an examination of the facts reported. *Walworth's Est.* v. *Bartholomew's Est.*, 76 Vt. 1, 11, 56 Atl. 101. The fact most prominent in this connection is the setting apart by Catherine of $1,000 as a fund for the benefit of Beulah, her adopted daughter, over one-third of which was in the hands of its custodian at the time of Catherine's death. It appears that the greater part was returned to Catherine as her illness progressed. Nothing appears in the exceptions as to Catherine's right to recall the money, nor as to the willingness of the custo-

dian of the fund to make larger or more frequent payments from it than he did.  But the transcript is referred to and made a part of the case, and it appears from this that the payments were made on Catherine's directions.  But it also appears from this that the fund was created from the avails of a sale of real estate owned by Catherine, and in fulfillment of an obligation to the mother of Beulah previously assumed, the exact nature and the date of which do not appear.  The writing given by the custodian when he received the fund was read into the evidence, and it appears from this that the money was to be paid over to Catherine for the benefit of Beulah, as Catherine might direct.  There was evidence that Catherine drew upon the fund when she needed things for Beulah.  There was other evidence that the money was paid and used for the support of Catherine. The fund was created some over four months before the date when Catherine is found to have come to want.  There was evidence that the only property in Catherine's possession at that date was her household effects and her jewelry.  The facts concerning this fund and the property remaining were to be considered in connection with many reported facts regarding Catherine's condition and necessities.  A great variety of considerations enter into the question whether a person has come to a condition of want which entitles him to relief under the provisions of a statute or a contract.  It is not often necessary that the last article be sold or the last dollar expended before the person can be said to have come to want.  We cannot say as matter of law that the facts regarding this unexpended balance of the Beulah fund and the ownership of this personal property impeach the conclusion, drawn by the court from all the facts, that Catherine came to want.

But the defendants contend that the breach of the condition is not the existence of a state of want, but the failure to make a suitable provision; and that the trial court has not found that there was this failure.  It is true that there is no such finding in terms.  But we think the findings which show a continued condition of want, made known to the defendants by repeated applications and representations, are a sufficient finding that the defendants failed to furnish Catherine a suitable support on her coming to want.

The defendants rely upon Catherine's conduct as a defence to the suit, on the grounds both of waiver and estoppel.

Waiver, being mainly a matter of intention, is ordinarily a question of fact. There is no finding of a waiver, and the judgment is the other way. We think it cannot be said as matter of law that the plaintiff's testatrix waived the breach of condition. There was no plea of estoppel; and if the case was one where an estoppel could be relied upon without its being pleaded, there is nothing to show that the case was tried on the theory of estoppel, or that the point was made below.

The plaintiff claims that her testatrix could not waive or part with her title except by deed, and refers to P. S. 2582, which provides that no estate or interest in lands shall be assigned, granted or surrendered, unless by a writing signed by the grantor or his attorney, or by operation of law. The plaintiff presents no further argument on matters affecting the title. The defendants, in presenting their brief, orally requested that, if it should be considered that the plaintiff had made out a case, judgment might be suspended to permit proceedings in equity. So the plaintiff assumes that the right of her testatrix is conclusively established by the finding that the condition was broken, while the defendants assume that it is within the power of a court of equity to relieve them from the forfeiture; and we are left without the benefit of an argument upon this question from either side.

It is said in a note in Greenleaf's Cruise on Real Property, Vol. 2, *37, with reference to estates created by deed, that if upon failure of that on which the estate is made to depend the land is to go to a third person, this is a limitation over and not a condition; that a limitation is imperative and is determined by the rules of law, while a condition is controlled by equity if an inequitable use of it is attempted; that the performance of a condition is excused by the act of God, or of the law, or of the party for whose benefit it was made; but that a limitation determines the estate absolutely whatever be its nature. Future interests in realty created by will are governed by the same rule. 1 Preston on Estates, *45, 50; 2 Jarm. Wills, 1486 (Ed. 1910); *Simpson* v. *Vickers,* 14 Ves. 341; *Re Hodges' Legacy,* L. R. 16 Eq. 92. The authorities undoubtedly support the general proposition that where there is a limitation over the title passes upon a breach of the condition without the possibility of relief in equity. Whether this places the plaintiff in an impregnable position upon the case presented remains to be seen.

Upon the death of the life tenants or the survivor of them, the Argus and Patriot property is to revert to the testator's children or their legal heirs; or, if the provision in the codicil regarding the two daughters is held to cover the Argus and Patriot property, it is to go to the testator's grandchildren share and share alike, and in default of grandchildren to the legal heirs of the two daughters. If the Argus and Patriot property passes to the two daughters in derogation of the life estate by virtue of the executory devise, there is no limitation over to a third party to be taken into account in considering the effect of Catherine's action. The plaintiff is claiming nothing in support of the title because of any ulterior right, for she claims that her testatrix has acquired, as executory devisee, an estate in fee-simple.

If we assume that the title has passed beyond the reach of equity, it will not necessarily follow that the defendants can have no relief. It is well settled that an executory devise to a person ascertained can be released at any time before the happening of the contingency upon which it depends. Gray, Perpetuities, 242, 274, 281; 2 Wash. Real Prop., *341, 357. If Catherine's interest was releasable to the defendants, it would seem that she might become estopped by her conduct from asserting her title against any equitable claims of the defendants. The limitation imposed upon the defendants' estate was created solely for the benefit of the two daughters. If they had declined to accept the support provided for them, the contingency on which the title was to pass could not have occurred. If there had been a further limitation over, the next taker could not have asserted the inadequacy of a support which the beneficiary was willing to accept as adequate.

The provision which terminates the estate of the life tenants on their failure to provide the two daughters with a suitable support, follows a provision which makes their support a lien and charge on the property. As a charge on the property, this matter would have been in the exclusive control of the court of chancery. That court might have enforced the provision by securing an application of the income through the medium of a receiver, or by ordering a sale of the property and directing the disposition of the avails. The connection of the clause of forfeiture with a provision of this nature is made the basis of an argument as to the testator's intention. It is urged by defendants that the interest which is to pass to the two daughters

on a breach of the condition is that reversion of the property which would otherwise take effect on the natural determination of the life estate; that the daughters or the survivor of them were to take only a life estate,—so that the property and right of possession passed to Elizabeth on the decease of Catherine; and that it is inconceivable that the testator intended that the failure to provide for Catherine alone should entitle her to the possession of the entire property when her right to support was a charge on the property. But we think the clause of forfeiture was inserted as an additional and effective means of securing the support; and that the interest taken by the two daughters under this provision was held in common and not by entirety. It was the purpose of the testator to secure the support of both during the lives of both, and to secure the support of the survivor after the death of either. If there had been no failure to support either while both were living, the survivor would have had the entire security, and would have taken the entire property in case of a default. And this may have some bearing upon the propriety of the action sought by the defendants in the event of an affirmance; for it seems manifest that the dominant idea of the testator in making this limitation was the security and enforcement of the provision for support, and not the possibility of a change in the line of transmission.

The case calls for some special consideration of the nature of the obligation imposed, and of the defendants' course in regard to it. The requirement is not absolute, but contingent. The duty arises from a condition of want, and may vary with the circumstances of the beneficiary. The want of means which raises the duty may not be continuous. Its existence may depend upon the fluctuations of an income received from other sources. The obligation may be increased by the demands of sickness, or be reduced by a return to health. The beneficiary was supporting herself from moneys placed in her hands. The regular payments determined upon might be sufficient at times, and at other times prove inadequate. If supplemental payments were resorted to, a different situation might be presented after the making of each. A particular payment might be a provision for the future, or might go to pay debts resulting from the inadequacy of previous payments. No other means of determining the inception and continuance of a condition of want is provided than the best judgment of the life tenant. If support is

to be furnished, there is no certain sum to be paid, no fixed time of payment, no reference to circumstances affording a standard of requirement.   Under such a provision the capacity and habits of the beneficiary may add to the difficulties of determination. It is evident enough, without any direct finding, that this element of embarrassment was present here.   It seems clear that support could not be refused on the ground that a more capable management would have prevented the necessity.   On the other hand, the beneficiary could not create and determine the measure of the necessity at her pleasure by an improper use of such funds as were furnished, or by a gift of her own funds which produced a necessity at the time of the giving.   If the demands of the beneficiary and the judgment of the life tenants were at variance, the matter would necessarily stand for the future determination of the courts.

Catherine is found to have come to want on the first day of March, 1902.   The statement of facts does not connect this finding with any particular default occurring or culminating on that day.   There is no finding of a claim or protest referable to the inadequacy of any particular prior or subsequent payment.   The matter rests upon the general statement that while receiving these payments she was making repeated demands for more funds.   The plaintiff stands upon the claim that the life estate of the defendants ended on the day named, and that the fee of the property immediately vested in Catherine and has since remained there.   So the plaintiff seeks to hold a judgment for damages amounting to $4,158, which presumably includes the mesne profits for the last two years of Catherine's life,— necessarily recovered on the ground that she was the owner of the property and had been wrongfully kept out of possession,— while Catherine was in receipt during all that time of monthly payments of $50, which were demanded for her support under the provisions of the will and were paid by the defendants as life tenants in rightful possession of the property.   Moreover, the plaintiff's testatrix, a few days before her death, having brought a bill to foreclose the defendants of any right or title they might have in the premises, accepted $200 from the defendants as a sufficient payment for the time being.

It is not necessary to the relief of the defendants that we find some ground of exception to the rule which declares that in cases of conditional limitation an absolute title passes to the

next taker on the happening of the contingency without entry or demand. The holder of an absolute legal title transferred by deed may have acquired it in circumstances which will prevent him from asserting it in equity. A party may, by misleading or inconsistent conduct not fraudulent in fact, preclude himself from setting up his title or ownership. 2 Pom. Eq. Jur., §§821, 805. Of two inconsistent benefits, the plaintiff's testatrix took one in her lifetime, and her executrix now sues for the other. During the two years of her life subsequent to the default as now determined at law, Catherine treated the original relation as still subsisting, and it is within the power of a court of equity to do the same. So the fact that the title passed to the plaintiff's testatrix by conditional limitation does not preclude the possibility of equitable relief in the circumstances of this case; and we think the defendants' rights in this behalf are to be determined by the rules applicable in ordinary cases of condition broken.

We proceed to inquire as to the rules governing relief from forfeitures in ordinary cases. As a general rule courts of equity will grant relief from a forfeiture incurred by the non-payment of money, unless the party has debarred himself from relief by inequitable conduct. It is said in *Dunklee* v. *Adams,* 20 Vt. 415, 50 Am. Dec. 44, that relief will only be granted where the condition broken is for the payment of money. The fact that this was a *dictum,* and an erroneous one, seems to be recognized in *Henry* v. *Tupper,* 29 Vt. 358, 371. It is so treated in the note to *Smith* v. *Mariner,* 68 Am. Dec. 85. But it is said that when the required act is of such a nature that its value cannot be pecuniarily measured as a basis of compensation, or the circumstances are such that the party entitled to its performance has suffered some peculiar injury from the default, relief against the forfeiture will not ordinarily be granted. If, however, one waives or acquiesces in a breach where he would otherwise be entitled to a forfeiture, he will ordinarily be precluded in equity from enforcing the forfeiture, and the defaulting party will be relieved. Note 68 Am. Dec. 85.

Nearly all the cases concerning equitable relief from forfeitures relate to matters of contract. A few cases relate to the breach of conditions in devises, and these are uniform in holding that a court of equity may intervene to relieve from the default of a devisee. Note 86 Am. St. Rep. 59. But the provisions in

these cases were for the payment of specific money obligations
The only cases in this State relating to relief from forfeitures
for non-support are those arising under deeds. *Austin* v.
*Austin,* 9 Vt. 420; *Dunklee* v. *Adams,* 20 Vt. 415, 50 Am. Dec.
44; *Henry* v. *Tupper,* 29 Vt. 358; *Weeks* v. *Boynton,* 37 Vt. 297;
*Joslyn* v. *Parlin,* 54 Vt. 670; *Blanchard* v. *Morey,* 56 Vt. 170;
*Dunklee* v. *Hooper,* 69 Vt. 65, 37 Atl. 225; *Abbott* v. *Sanders,* 80
Vt. 179, 66 Atl. 1032, 13 L. R. A. (N. S.) 725, 130 Am. St. Rep.
974, 12 Ann. Cas. 898. It is clearly the doctrine of these deci-
sions that relief in equity will not be denied in cases of non-
support on the theory that the loss of support is not susceptible
of compensation. It is true that the support of Miss Atkins
was provided for by payments of money, but the sufficiency of
the payments is to be determined in part by a valuation of the
services required for her proper support. The review of authori-
ties contained in *Henry* v. *Tupper* resulted in the conclusion
that relief for the nonperformance of collateral duties is a
matter of discretion in the courts of equity, to be determined
according to the circumstances of each case; and some of the
considerations which may influence a court of equity in grant-
ing or refusing relief in cases of nonsupport are there presented.
We find nothing in the situation as presented here which re-
quires the conclusion that the defendants have debarred them-
selves from equitable relief by intentionally withholding or
abridging the support which the plaintiff's testatrix was entitled
to under the will.

It will be necessary to pass upon certain exceptions to de-
termine the status of the case. The admissibility of the certified
copy of Hiram Atkins' will and of the letters testamentary; the
sufficiency of the evidence to sustain the findings that Catherine
came to want, and that the defendants were in possession claim-
ing as life tenants; and its sufficiency to enable the plaintiff to
maintain ejectment after a proper demand, and to have the
damages for the last two years of Catherine's life included in
the judgment; are matters sufficiently disposed of by what has
already been said.

Miss Rice, a professional nurse who attended Miss Atkins
some years, was produced by the plaintiff, and testified regard-
ing Miss Atkins' necessities, and applications made by the wit-
ness for further assistance. In the course of her examination
she was permitted to testify regarding certain letters, not called

for until then, and not produced, that they were all about the same, and that she remembered one in particular in which she wrote that Miss Atkins needed some clothes, and asked for $50. If this was error nothing can be claimed from it, for the defendants in no way questioned the making of repeated representations of need and calls for more money.

Mr. C. G. Austin was the attorney of Miss Atkins and had the sole charge of her affairs for several years prior to her death. While he was on the stand as a witness for the plaintiff his letters to the defendants were called for, and were not produced because not in the hands of defendants' counsel. The witness was afterwards permitted, in answer to a general inquiry, to give a detailed account of Miss Atkins' financial affairs, her impoverished condition, and the efforts made from time to time to obtain payments for her support. In the course of this testimony it appeared that many of the applications and representations were made by letter. Nothing further appears in the exceptions, but the transcript is made controlling, and it appears from this that on motion of defendants' counsel everything testified to by the witness regarding the contents of the letters was stricken out.

It was not error to permit the witness Austin to testify that the avails of certain sales of real estate belonging to Miss Atkins were used in paying her existing indebtedness.

The bill in equity brought by Miss Atkins against the defendants was properly received to show that the matters therein complained of were brought home to the knowledge of the defendants.

The answer to this bill was received under exception. No copy of it has been furnished. Presumably it disclosed the position taken by the defendants regarding the claim of the orator. No error appears.

The testimony of Miss Atkins' attending physician that at the time of her death she was owing him a certain sum was admissible in connection with the other evidence as to her financial condition.

Miss Rice, who had been Miss Atkins' attending nurse, and who took care of her at various times afterwards, testified that she had loaned her money at different times. This came in in connection with her testimony as to Miss Atkins' condition of destitution at the times in question, and was properly received.

This witness was also permitted to testify that during the times she was in attendance upon Miss Atkins her income was not sufficient to provide her with proper necessaries. Miss Rice testified fully regarding Miss Atkins' physical condition, her requirements in the way of nursing, her expenditures in that behalf, and her manner of living; and it was not error to receive in connection therewith the evidence complained of.

The written demand for possession which was delivered to the defendants just before the service of the writ, but while the sheriff was present with the writ in his pocket, was properly received. The commencement of the suit for this purpose was not the issuance of the writ but the service of it.

The defendants excepted to the finding of fact that the plaintiff's damages are $4,158.84, as not warranted by the evidence. The only claim made under this exception, not previously disposed of, is that deductions should have been made for taxes, insurance and repairs. There is nothing in the case to show the amount of these expenditures. These were matters of allowance, which were peculiarly within the knowledge of the defendants, and were for the defendants to show.

*We find no ground of reversal, but the judgment of affirmance will be suspended to permit proceedings in equity.*