THOMPSON-STARRETT COMPANY v. JOHN E. PLUNKETT.

October Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed June 28, 1915.

*Sales—"Delivery"—Acceptance—Passing of Title—Large Granite Blocks—Necessity of Change of Possession—Accretion— Applicability of Doctrine to Statues Carved from Large Blocks of Granite—Replevin—Nature of Remedy—Right of Possession — Exceptions—Sufficiency—Estoppel—Elements —Necessity of Reliance on Act—Review—Matters not Considered Below—Presumptions in Support of Judgment.*

Where a railway terminal company contracted with a sculptor to procure and superintend the carving of designated statues, the terminal company to furnish the granite ready to be carved at the place where the carving should be done, whether at Washington, New York, Windsor, or Northfield, and the terminal company contracted with plaintiff to furnish the granite for the statues, to box them after they had been carved, and to have them transferred to Washington and set in place on a railway station, and plaintiff contracted with a quarry company, owning a granite quarry and also owning granite sheds at Northfield, to fulfil plaintiff's undertakings with the terminal company, and the sculptor had the statues carved at Northfield by the quarry company to conform to models that he conceived and prepared, and from blocks of granite placed by the quarry company for that purpose on its premises at Northfield, as the blocks of granite were from time to time so placed for carving they were delivered to the terminal company, and the general title to the blocks thereupon vested in that company.

The quarry company cannot invoke the doctrine of accretion in respect of the statues, for the granite blocks were not made into works of art by it, but by the sculptor, who procured the statues to be carved to conform to his models.

Where, after the statues were carved, the quarry company refused to ship them as it had agreed until plaintiff should make an advance of money to which the quarry company was not entitled, plaintiff

12

had the right to waive further performance and to take possession of the statues for the purpose of itself fulfilling its contract with the terminal company, and that right of possession entitled it to maintain replevin against an officer who had attached the statues as the property of the quarry company.

A contract is to be construed with reference to its obvious purpose and intention, and is to be given a fair and just construction, and so rights and duties may be granted and imposed by necessary implication, in order that the true purpose of the contract may be accomplished.

Where a contract is repudiated and there is no adequate remedy by suit for damages resulting from the breach, the innocent party, if the subject-matter of the contract permits, may maintain a suit for the possession of the specific property to the possession of which he is entitled.

In this State the plain, simple, and speedy process by which one may get possession of personal property, to the possession of which he is entitled, is the action of replevin.

The stringent rule requiring change of possession of sold personal property, in order to protect the vendee against the vendor's subsequent vendees or attaching creditors, does not apply where the purpose of the conveyance and the nature of the transaction require the vendor to continue in possession, or the nature and situation of the property is such that actual change of possession is impracticable.

Where a terminal company contracted with a sculptor to procure and superintend the carving of designated statues, the terminal company to furnish the granite ready to be carved, and a quarry company, owning a granite quarry and also owning granite sheds at Northfield, contracted to furnish the granite for the statues and also contracted with the sculptor to carve the statues at Northfield, under his superintendence and to conform to models conceived and prepared by him, and delivered the blocks of granite to the terminal company at the quarry company's sheds at Northfield where the carving was done by the quarry company, and each statute weighed about 100 tons and required about one year's work to carve it from the block of granite, and could only be handled where there was machinery adequate for handling such heavy bodies, the possession of the granite blocks and of the statues by the quarry company was not such constructive fraud as

to entitle creditors of the quarry company to attach the statues as the property of that company.

Where the court submitted to the parties a draft of its findings of facts, and thereupon defendant filed 16 requests for further findings of fact, some of which requests were granted, some refused, and others complied with in part, error cannot be predicated upon an exception "to the findings, respecting the matters referred to in the requests, wherein the court found otherwise than requested, and wherein the court failed to find as requested, as being against the weight of evidence and as unsupported by any substantial evidence," for the exception is conditional and qualified and points out nothing.

An equitable estoppel always implies that one has been misled to his prejudice, and so the fact that plaintiff had previously attached statues as the property of a quarry company did not preclude plaintiff from denying the company's ownership in a replevin suit by plaintiff against an officer attaching the statues on behalf of another creditor of the quarry company, where neither the attaching creditor nor the quarry company were misled to his or its prejudice.

Where the record does not show that a claimed estoppel was either pleaded or relied on below it will not be considered on review.

In replevin for property attached as the property of another, whether a previous attachment by plaintiff of the same property as the property of that other had any evidentiary force on the question of ownership was, in the first instance, a question of law for the trial court, and, if it had any such tendency, its weight was for the consideration of that court, and, in the absence of an exception, those questions are not reserved.

The word "delivery" often imports acceptance and passing of title, and, in support of the judgment below, it is held that the word was so used by the trial court in its findings of fact.

REPLEVIN for six granite statues. Plea, the general issue. Trial by court at the September Term, 1912, Washington County, *Miles*, J., presiding. Judgment for the plaintiff to recover one dollar and its costs. The defendant excepted. The opinion states the case.

*Dunnett & Leslie, George W. Wing, C. D. Edgerton, J. W. Gordon,* and *Plumley & Plumley* for the defendant.

*W. B. C. Stickney* and *John G. Sargent* for the plaintiff.

HASELTON, J.   This is an action of replevin.   The property replevied consisted of six monolithic statues made of Bethel granite for the Union Station at Washington in the District of Columbia.

The defendant, an officer, attached the property in question as the property of the E. B. Ellis Granite Company, and the plaintiff, the Thompson-Starrett Company, brought this action of replevin against the attaching officer by virtue of P. S. 1825, which permits one who is the owner of personal property, or is entitled to the possession thereof, to replevy it from an officer who attaches it as the property of another.   Trial was had by the court, and on facts found judgment was rendered for the plaintiff.   The defendant brings the case here on exceptions.

The plaintiff company, before 1903, entered into a contract with the Washington Terminal Company for the furnishing of Bethel granite for the station named.   In 1903, the stone work was sublet by the plaintiff to individuals who, with the consent of the plaintiff, assigned the contract to the E. B. Ellis Company, which entered upon the performance of the contract.   The E. B. Ellis Company owned a granite quarry in Bethel, from which the granite for the statues in question was afterwards quarried, as will herein appear, and also owned granite sheds in Northfield, Vermont.   July 24, 1905, the Ellis Company executed and delivered to the plaintiff a real estate mortgage of the property above named.   The mortgage was, in form, a chattel mortgage as well as a real estate mortgage, but as a chattel mortgage it was defective in that the affidavit, required to be made and subscribed by both the mortgagor and mortgagee, was made and subscribed by the mortgagor only.   Foreclosure proceedings, afterwards had followed the course only of a foreclosure of real estate.

Some of the facts thus far stated are preliminary in their character, but they help to an understanding of the case.

September 1, 1905, the Washington Terminal Company made a contract with Louis St. Gaudens, by which, among other things, he was to procure the carving of the statues in question and to superintend such work.   By this contract the Terminal Company agreed to furnish the granite, ready to be carved, at the place where the carving should be done, whether at Washing-

ton, New York, Windsor in Vermont, or Northfield in this State, as might be determined.

It does not appear that the plaintiff and the Ellis Company knew the terms of this contract, but their correspondence shows that they knew of the contract and its nature, and that some place other than Northfield might be chosen as the place where the granite would be furnished for carving.

Afterwards the Terminal Company contracted with the plaintiff company to furnish Bethel granite for the six statues. The contract was made by letter and was consummated February 21, 1907. The contract expressed the understanding that St. Gaudens would arrange to have the carving of the statues done at Northfield, Vermont. As a part of this contract, the plaintiff was to box the statues, after they had been carved, and have them transported to Washington and set in place on the building in question, was to do these things at its own cost, and was to and did assume the entire responsibility in regard to these doings, the cost of insurance and liability for damage to the statues.

We come now to the contract between the Thompson-Starrett Company, the plaintiff herein, and the Ellis Company with regard to the quarrying and furnishing of the granite for these statues, and with regard to the statues themselves, which were attached as the property of the Ellis Company. The matter of transforming the blocks of granite into works of art was no part of this contract, as it was no part of the contract between the plaintiff and the Terminal Company. In the earlier part of the correspondence which culminated in the contract between the plaintiff and the Ellis Company, the latter recognized that the carving might be done elsewhere than on its plant at Northfield, and that it might not be able to get, as it desired, a contract with St. Gaudens for doing the carving under his superintendence. When, as appears from the Ellis Company's letters, it had made a verbal arrangement with St. Gaudens for doing the carving, subject to its being able to secure the services of a New York sculptor to occasionally inspect the work and see that it was properly done, the Ellis Company made a proposition to the Thompson-Starrett Company conditioned upon there being no hitch in the arrangement with St. Gaudens. This proposition, as appears by the correspondence, was unsatisfactory to the Thompson-Starrett Company, whereupon the Ellis Company withdrew all conditions saying, ''we have no doubt of our ability

to make a satisfactory arrangement with Mr. St. Gaudens as we have stated to you, and are therefore willing to accept any risk in this direction." With this explanation and withdrawal of conditions, the contract was closed. The contract amounted to an agreement of the Ellis Company to carry out the undertakings of the plaintiff company with the Washington Terminal Company.

The court below found that the granite for the statues was "delivered" by the Ellis Company from time to time at its sheds in Northfield. It is clear from the judgment rendered that the court used the word "delivered" in its appropriate legal sense and held that under this finding the title to the granite blocks, out of which the statues were carved, passed by such delivery out of the Ellis Company. The defendant urges that the word "delivered" means here no more than "transported." But we think that the correct construction of the exhibits referred to and made a part of the findings is otherwise, and that to give to the word "delivered" as used by the court the meaning of "transported" simply, would be unwarranted. We think that, under the true construction of this rather vague contract, the granite blocks were delivered when they were put for carving in the place designated for that purpose. In view of the character of the property, the fact that the premises on which the statues were put for carving were premises of the Ellis Company, and not other premises at Windsor or elsewhere, is in no way a controlling fact.

The Ellis Company invokes the doctrine of accretion saying, in effect, that it has transformed the granite blocks into works of art; but it had not done so. This work of transformation was that of St. Gaudens, who procured the carving of the statues by the Ellis Company to conform to models conceived and prepared by him. The exhibits show payments from time to time by St. Gaudens to the Ellis Company. No claim is made of a right to the possession of the statues by the Ellis Company on account of any default on the part of St. Gaudens.

The findings of fact are silent upon the question of to whom the granite blocks were delivered at Northfield. The plaintiff claims that they were delivered to it. The defendant claims that there was no delivery to any one. We think that from the exhibits constituting and explaining the various contracts, it is a necessary conclusion of law that, when the granite blocks were

delivered at Northfield ready for carving under the superintendence of St. Gaudens, they were delivered to the Washington Terminal Company, that the general title to the blocks then vested in such company, and that the work by St. Gaudens, or by his procurement and under his superintendence, was done upon the property of the Terminal Company.

It is not supposable, from the exhibits which are made a part of the findings, that the Terminal Company contracted with St. Gaudens to procure the carving of statues which, when carved, should be the property of the plaintiff company or the Ellis Company.

However, the plaintiff company as a part of the contract for delivering the granite for the statues undertook, after the statues were carved, to box them, to transport them to Washington and set them in place on the building in question, to assume the entire responsibility of doing these things, to bear the cost of insurance, and to make good any damage which might be done to the statues in boxing, transporting, or setting them in place. This contract, as we have seen, the Ellis Company undertook to do and carry out by its contract with the plaintiff company. But, as the court finds, the plaintiff was alone responsible for the faithful performance of its contract with the Washington Terminal Company, and the Ellis Company was responsible to no one except the plaintiff for the faithful performance of its contract with the plaintiff.

After the statues were carved to the satisfaction of St. Gaudens, the Ellis Company had the right to their possession only for the purpose of boxing them, transporting them to Washington and setting them.

After some prior correspondence about the matter the plaintiff wrote the Ellis Company, April 8, 1912, that it had been informed by the architect (referring to the architect having charge of the building) that all the carving on the statues had been completed and approved by St. Gaudens. In view of this information, the letter asked for immediate advice as to what steps the Ellis Company was taking to transport the statues to Washington, and as to what its setting arrangements were. Four days later, April 12, 1912, the Ellis Company replied to the foregoing letter saying that the statues were all carved and had been accepted by St. Gaudens, and that it was doing all it could to prepare the work for shipment. The letter then proceeded:

''Before this work can be shipped, it will be necessary to settle some outstanding bills connected with our contracts.

We hereby make requisition for a payment of thirty-two thousand dollars, ($32,000.00) on account of the payroll and transportation of statues and payment of certain notes guaranteed by your company, immediate payment of same having been demanded of us this day.''

The conditions were not complied with, and the court found that the reason why the conditions were not complied with was that advancements had been made to the Ellis Company creating an indebtedness largely exceeding the amount demanded.

Neither the Washington Terminal Company nor its architects had recognized the Ellis Company in respect to the matters covered by the contract between the Terminal Company and the plaintiff.

The Ellis Company had simply become an instrument of the plaintiff in carrying out its contract with the Terminal Company, and when the statues were completed the Ellis Company could rightly hold them for no other purposes than those contemplated by the contract, and in holding them for the purpose of securing an advance of $32,000.00, to which it was not entitled, it held them wrongfully and against the right of the plaintiff; for the plaintiff, though not the general owner, was under obligation to box, transport, and set the statues, and the Ellis Company's contract obligation was undertaken in view of that of the plaintiff, and in aid of that, and in subordination to that, and when the Ellis Company refused to go on with its contract except upon conditions which it had no right to make, the plaintiff, as an incident to its obligation, had a right to the possession of the statues for the purpose of fulfilling its obligations, all such right of possession as is sufficient in replevin. *Sprague* v. *Clark*, 41 Vt. 6; *Cox* v. *Fay*, 54 Vt. 446, 451; *Tittemore* v. *LaBounty*, 60 Vt. 624, 15 Atl. 196; *Chaffee* v. *Harrington*, 60 Vt. 718, 15 Atl. 350; *Crampton* v. *Chapman*, 85 Vt. 74, 81 Atl. 231.

The Ellis Company's refusal of further performance under the contract with the plaintiff, gave the plaintiff a right to waive further performance and a right of possession of the property for the purpose of completing its own contract with the Terminal Company, for the completion of which it was at all times held responsible.

A contract is to be construed with reference to its obvious purpose and intention and is to be given a fair and just construction, and rights and duties may be granted and imposed by necessary implication in order that the true purpose of the contract may be effectuated. *Rioux* v. *Ryegate Brick Co.*, 72 Vt. 148, 47 Atl. 406. The contract here, an unusual one, cannot be construed to mean that, after years of necessarily contemplated labor had been bestowed upon blocks of granite, the property of the Terminal Company, in transforming them into the likeness of the models furnished, there would be in case of default on the part of the Ellis Company, in respect to transporting the statues to Washington, no legal way of getting them there. The conclusion cannot be drawn from the contract that, in case of such default, the plaintiff's only remedy against the Ellis Company would be to sue it for a breach of contract, and the only remedy of the Terminal Company, (we use the word "remedy" though its use here is a perversion of language) would be to sue the plaintiff to recover damages for a breach of contract. Such a construction of this contract in view of its object and nature is impossible. It is a necessary implication to be drawn from the contract that if, when the statues were completed and ready for transportation to Washington, the Ellis Company should be unable, or should wrongfully refuse, to transport them to Washington, the plaintiff should have the right to take possession of them in order that it might then transport them to be set in the station building in pursuance of its contract.

Where, upon the repudiation of a contract, there is no adequate remedy by a suit for damages in consequence of the breach, the innocent party, if the subject-matter of the contract permits, may proceed by suit to get the possession of specific property to the possession of which he is entitled. Professor Williston in 14 Harvard Law Review, pp. 434, 322; Williston's Pollock on Contracts, pp. 362, 339.

In this State the plain, simple, and speedy process by which one may get possession of personal property, to the possession of which he is entitled, is the action of replevin.

While the general title to the blocks of granite, out of which the statues were afterwards carved, passed to the Terminal Company when they were placed at Northfield to be carved into statues under the direction of St. Gaudens, one, at least, of the statues, Ceres, was on premises in the possession of the Ellis

Company when it was attached, and at this point we assume without deciding that the others likewise were, notwithstanding a lease of a part of the granite sheds at Northfield, in which some of the statues were, and notwithstanding their situation with respect to Andrew Bernasconi, who had chiseled the statues, under arrangements made by him with the Ellis Company, and who claimed a lien on all the statues.

To sustain the judgment it is necessary to consider whether or not the statues were subject to attachment by the creditors of the Ellis Company in consequence of their situation, and we assume in considering this question that none of the statues were in a situation more favorable to the plaintiff's claim than was the statue, Ceres. We treat the premises in question as in the possession of the Ellis Company, for although the mortgage referred to in the early part of the opinion had been foreclosed, the equity of redemption had not expired and the mortgagee had not taken possession.

Each statue weighed something like one hundred tons, and about a year's work had been put onto each block of granite in converting it into a statue, and the statues could only be handled where there was adequate machinery for handling such ponderous bodies. Property may be of such a cumbersome character, under such visible disposition and treatment, as to take it out of the rule that fraud is presumed without change of possession, and that though property has been sold and title has passed as between the parties it is subject to attachment by the creditors of the vendee without actual change of possession. We think that this property did not come under the rule but under the exception. *Kingsley* v. *White,* 57 Vt. 565, 567; *Fitch* v. *Burke,* 38 Vt. 683, 688; *Hutchins* v. *Gilchrist,* 23 Vt. 82; *Weeks* v. *Weed,* 2 Aik. 64, 70.

The stringent rule in this State as to the necessity of a change of possession is stated very strongly by Judge Prentiss in the case last cited, but he also states the exception in language well chosen and applicable here. He says: ''Indeed, the rule appears to apply to all cases, except where the purpose of the conveyance and the nature of the transaction entitle or require the vendor to continue in possession, and the law, considering it necessary and justifiable, approves and permits.''

In such cases possession passes with the title, and as was said in *Kingsley* v. *White,* above referred to, ''the controlling elements

which take such property out of the operation of the ordinary rule requiring a change of possession to perfect the sale of the property from attachment by the creditors of the vendor, are the character and situation of the property; that is, that the property is ponderous, incapable of personal possession and difficult of removal.''

The applicable law to be drawn from our cases is well understood by the profession and is carefully and correctly stated in the Vermont Digest, and in the Digest of Daniel Roberts, in this language:    ''The rule requiring a change of possession of property sold, in order to protect it from further sale by the vendor or attachment for his debts, does not require an actual removal or manual change of possession, where from the nature of the property, or its situation, such removal or manual possession is impracticable.''

Where the exceptional doctrine applies, possession by one who formerly had title is not constructive fraud nor a badge of fraud; and if actual fraud is claimed the burden of showing it is upon him who asserts it.

At the time of the replevin of the statues, Bernasconi's claimed lien was satisfied by the plaintiff.

The court found that before this suit was brought the plaintiff demanded the possession of the statues of the defendant, the officer who had attached them, but that the demand was refused.

After hearing the case the court submitted to counsel for the parties a draft of its findings of fact, and the defendant filed sixteen requests for further findings of fact.    Some of these were complied with, some were refused, and some were complied with in part and refused in part.    The defendant's counsel thereupon excepted ''to the findings respecting the matters referred to in their requests, wherein the court found otherwise than requested, and wherein the court failed to find as requested as being against the weight of evidence and as unsupported by any substantial evidence.''

Error cannot be predicated upon such an exception, for it is conditional and qualified and points out nothing.    County Court Rule 28, §2; *State* v. *LaPoint,* 87 Vt. 115, 119, 88 Atl. 523, 47 L. R. A. (N. S.) 717; *State* v. *Pierce,* 87 Vt. 144, 151, 88 Atl. 740; *Burton* v. *City of Rutland,* 87 Vt. 224, 88 Atl. 729; *In re Bean's Will,* 85 Vt. 450, 82 Atl. 734; *Luce* v. *Hasson,* 76 Vt. 450,

58 Atl. 725; *White* v. *Lumiere Co.*, 79 Vt. 206, 64 Atl. 1121, 6 L. R. A. (N. S.) 807; *Drowin* v. *Wilson*, 80 Vt. 335, 67 Atl. 825, 13 Ann. Cas. 93; *Ide* v. *Boston & Maine*, 83 Vt. 66, 82, 74 Atl. 401; *Johnson* v. *C. V. Ry. Co.*, 84 Vt. 490, 79 Atl. 1095.

This rule of practice gives to every litigant a full opportunity for one fair trial, while it prevents causeless retrials, as the result of claims made here which should have been distinctly and without qualification made below.   The rule is most salutary, and as much, probably, as any that has been made or can be made, prevents the needless prolongation of law suits, and expedites justice.

The case discloses no error.

*Judgment affirmed.*

## ON MOTION FOR REARGUMENT.

After the decision of this case as shown by the above opinion, the defendant filed a motion for a reargument, whereupon the judgment entry was withheld, the case left with the court, and the defendant given leave to file a brief presenting his grounds for asking for reargument.

A brief was shortly filed by some of the counsel for the defendant, and later another brief was filed by other counsel for the defendant.

Brief No. 1 urges that the court erroneously held that the title to the six granite blocks passed out of the Ellis Company, upon the delivery of the blocks at Northfield.   Counsel say that the Court, in the opinion, lays great stress upon the fact that the blocks of granite were to be delivered at "Northfield."   But the very opposite is the fact.   The aim of the opinion is to make it clear that though the granite blocks were delivered at Northfield, on the premises of the Ellis Company, the situation was not different from what it would have been if they had been delivered at some of the other places considered.   The opinion shows for itself.

Counsel now claim that the court below erred in finding that there was a delivery of the blocks of granite at Northfield.   We discuss this matter no further than we did in the opinion above, for no exception was taken to the finding complained of.

Counsel claim that the plaintiff's contract was not with the Washington Terminal Company. This claim is probably immaterial, but the court below took that view of the contract in a finding to which no exception was taken, and in their original brief in this Court, the defendant's counsel so designated the contract six or seven times, sometimes with emphasis.

Counsel now admit in their brief on this motion that in their original brief they "mentioned" the Washington Terminal Company as principal in the contract with the plaintiff; and that there were facts and statements in the foreclosure suit referred to in the opinion, showing that the Terminal Company was the real principal. But the counsel now say that in the evidence and records in this case "so far as they have seen them," there is not a word disclosing such fact. While we do not refer to the transcript to sustain the findings of the court below, since the finding was not excepted to, we do refer to it to meet the suggestion last made; and we find, on page 21 thereof, that the defendant's counsel distinctly stated in open court, that the contract now under consideration, was between the plaintiff and the Washington Terminal Company. The plaintiff's counsel, as appears on page 9 of the transcript, had already stated the same thing in open court. There was no misunderstanding or inadvertence about this matter in the court below, and the defendant has nothing to complain of in this matter.

The remainder of the brief in support of the motion is, except upon one point, devoted to matters touched upon in the opinion with as much fullness as seemed then, or as seems now, to be profitable.

At about the time of the attachments by the Northfield institutions, in which they attached the statues as the property of the Ellis Company, the plaintiff also caused them: to be attached as the property of the Ellis Company, and it was afterwards that this suit of replevin was brought. The point which we have passed over raises the question that this attachment by the plaintiff estops it from claiming an interpretation of the contract under consideration inconsistent with ownership by the Ellis Company of the statues at the time of the attachment. This claim was, in substance, made in the original argument of the case, though not by counsel whose brief we are now considering, and was not overlooked by the court, though it was not mentioned in the opinion; for the law is clearly settled that such

mere attachment does not operate as an estoppel to deny title in the defendant, since an estoppel always involves the element that one has been misled to his prejudice.     *Webster* v. *State Mutual Fire Ins. Co.,* 81 Vt. 75, 69 Atl. 319; *Boynton* v. *Hunt,* 88 Vt. 187, 92 Atl. 153; *Vermont Accident Ins. Co.* v. *Fletcher,* 87 Vt. 394, 397, 89 Atl. 480; *Royce* v. *Carpenter,* 80 Vt. 37, 46, 66 Atl. 888.     And here no claim was or is made that the defendant or the Ellis Company or any attaching creditor was misled to his or its prejudice.

In this State an approved way of attaching the real estate of a defendant in a town is to attach as his, all the real estate in the town.     But it would be quite absurd to claim that, by such attachment merely, a plaintiff is estopped from afterwards asserting that some of the real estate in the town belongs to himself or to some one else than the defendant in the attachment suit.

Finally with reference to this question of estoppel we remark that the record does not show that an estoppel was either pleaded or relied on in the court below and that for that reason the defendant was not entitled to have the matter considered on review.     *Atkins, Exr.* v. *Atkins,* 87 Vt. 376, 385, 89 Atl. 643.

However, the defendant claims that the attachment has evidentiary force.     Whether this attachment by the plaintiff in 1912 had any tendency to show the mutual intention of the parties to the written contract of 1907, was, in the first instance, a question of law for the trial court.     And if it had any such tendency its weight was for the consideration of the court in finding the facts.     The defendant had no exception bringing these questions here.

We turn now to brief No. 2, on the motion for a reargument, a brief presented by other counsel for the defendant than those who prepared brief No. 1, already considered.

The first thing which attracts our attention causes some surprise.     The defendant through the counsel who prepared brief No. 1, had argued at very considerable length that the court fell into error in treating the Washington Terminal Company as a party to the contract with the plaintiff which has been so much discussed.     But in brief No. 2 the defendant, through other counsel, takes the other view, and throughout treats the contract referred to as one between the plaintiff and the Washington Terminal Company.     The claim advanced in brief No. 2, is that

this contract with the Terminal Company would not, however, pass title to the granite blocks to the Terminal Company upon their delivery at Northfield, that the contract did not contemplate and that there was not in fact, any such delivery of the granite blocks at Northfield, as would pass title to the Terminal Company, or for that matter to any one at Northfield—that title to nothing would pass until the statues were set in place at the Terminal Station at Washington and accepted, and that so far as the case shows, they may still be unaccepted and may yet be "thrown back upon the Ellis Granite Company."

The nature of the contract in question was fully argued in the original hearing, and was fully considered by the Court, and it would be to no purpose to restate it.   The contract as we construed it and now construe it, was for the quarrying and delivery of certain blocks of granite at Northfield, and further for the later doing of certain things with regard to statues to be in the meanwhile carved out of the blocks by virtue of a contract between the Washington Terminal Company and St. Gaudens.

The counsel in brief No. 2 argue with regard to the finding of the delivery of the blocks of granite at Northfield, that delivery without acceptance, about which there is no express finding, does not pass title.   But the word "delivery" often imports acceptance and the passing of title, and in view of the judgment of the court below, we held that the word was so used by the court below.   We did not refer in this connection to the Terminal Company's contract with St. Gaudens, not feeling at liberty to assume that the defendant knew more of it than its general nature; but now counsel refer us to its terms, and so we note that the Terminal Company contracted with St. Gaudens that it would furnish the granite, to be carved for its purposes and uses, and that the carving was done under this contract.   This imports an acceptance of the granite blocks, and shows very clearly the sense in which the word "delivery" as used in the findings is to be taken.   We said before that the contract was somewhat vague, and we say now that it was somewhat loose, but it is to be remembered that, as the case shows, the Washington Terminal Company, had for several years before procured the furnishing of the stone work of the Union Station from the Bethel quarries, and may be presumed to have felt some reliance upon the character of the granite therefrom.   At any rate they left the contract for the

granite blocks as they did, and our interpretation of it is unchanged.

It appeared, as stated in the opinion that the plaintiff claimed that the delivery at Northfield passed title to it, and that the defendant claimed that there was no delivery to anybody. It sufficiently appeared that the respective claims here and below were, on the one hand, that the Thompson-Starrett Company was the general owner of the statues, and on the other hand that the Ellis Company was the general owner. The court below found that the granite blocks were delivered at Northfield, but made no finding in the matter of to whom the title to the granite blocks passed by the delivery at Northfield. No exception was taken to the failure to find in this respect, and we considered it a necessary conclusion from the writings that constituted the contract, and that were referred to and made a part of the findings, that the general title to the granite blocks passed to the Terminal Company, upon their delivery at Northfield. Since this conclusion seemed a necessary one and sustained the judgment, we proceeded to draw it, and though the defendant now complains of our course in doing so, the course taken was entirely proper. Any other course would under the circumstances have been unwarranted. *County of Bennington* v. *Manchester,* 87 Vt. 555, 558, 90 Atl. 502. The questions we considered were necessarily involved in the main inquiry. *In re Ruggles' Wills,* 73 Vt. 355, 359, 51 Atl. 8; *First National Bank* v. *Bertoli,* 88 Vt. 421, 426, 92 Atl. 970. And the ultimate question for us was, did the case show that the court below erred in rendering judgment for the plaintiff. *Burlington Paper Stock Co.* v. *Diamond,* 88 Vt. 160, 163, 92 Atl. 19.

Both briefs on the motion for a reargument deal largely with questions that were fully argued on the original hearing and that were carefully considered by this Court in reaching its decision.

In some respects the briefs, we think, misinterpret the opinion. But upon fuller consideration by counsel, we think the views of the court as expressed in the opinion will not be considered capable of misconstruction. In view of the length of the briefs, unusual on a motion of this sort, we have not undertaken to mention the claims made in every subdivision thereof. But we have carefully examined both briefs, and have carefully reexamined the briefs of counsel on the original hearing. See *Town School District* v. *District No. 2,* 72 Vt. 451, 456.

*Our conclusions remain unchanged, and the motion for a reargument is denied. The judgment of affirmance is no longer withheld. Let it be entered by the clerk.*