## ALFRED RIOUX *v.* THE RYEGATE BRICK CO.

January Term, 1900.

Present : TAFT, C. J., ROWELL, TYLER, MUNSON, START, THOMPSON and
WATSON, JJ.

Opinion filed March 3, 1900.

*Construction of contracts—Substance as distinguished from mere form*—The sub-
stance of a contract as distinguished from its mere form must be consid-
ered when it is necessary so to do in order to ascertain the substantial
intent of the parties.

*Construction of contracts—Substantial intent controls*—In the construction of a
contract the substantial intent of the parties is the controlling consid-
eration to which greater regard is to be had than to the precise words
used.

*Construction of contracts—Circumstances in which parties contract to be consid-
dered—Fair and just construction favored*—In the construction of a con-
tract the circumstances in which the parties contract are to be looked
at ; and a construction will never be adopted that will give one party
an unfair advantage over the other, unless such was their manifest
intention when the contract was made.

*Construction of contracts—Duty imposed by necessary implication—Implied
covenants and promises*—A duty may be imposed upon a party to a con-
tract by necessary implication ; and when such implication is not
external to the contract, but gathered from it, it is as much a part of
the contract as if set forth in express words.   Such implication is but
an application of the doctrine of implied covenants and promises.

*Application of the foregoing principles of construction*—By the terms of a con-
tract by which the plaintiff was to make for the defendants, in their
brickyard, a million brick a year for five years, and as many more as the
defendants wanted, the defendants " had the privilege of furnishing "
supplies, and the plaintiff was to be paid for all brick sold each
month, on the 15th of the following month.   It being established that
the plaintiff's only means of carrying on the contract was what he
received under it, and that this was known to the defendants at the
time of the contract, it must be taken that it was the mutual intention
of the parties that the plaintiff should receive from that source enough
to enable him to prosecute the work.   Neither party could have
intended less, for otherwise, as they knew, the purpose of both was
sure to be defeated.

*Same*—In the circumstances, the law construes the contract in this case as imposing upon the defendants by necessary implication the duty of furnishing supplies or of selling and paying for brick, or of doing both, so as to enable the plaintiff to go on with the work.

*Construction of contract in respect to payment after sale—Reasonable time in which to sell*—Under the contract, the obligation to pay for brick made was not wholly contingent upon the actual sale of the brick. They were to pay on the 15th of the month following a sale ; and after the lapse of a reasonable time in which to sell, they were bound to pay whether they had sold or not.

*Reasonable time dependent upon circumstances—How determined in this case*— What is a reasonable time depends on the circumstances of the particular case, and in this case a reasonable time was a time seasonable to meet the necessities of the plaintiff, and to enable him to prosecute the work.

*Breach of contract which goes to its essence—External condition subsequent— Discharge of injured party*—Under the contract in this case the defendants after furnishing supplies and paying help for some months, refused to furnish further supplies and neglected to sell, or pay for, brick made, and so, committed a breach which went to the essence of the contract, operated as an external condition subsequent, and entitled the plaintiff to be discharged from further performance on his part.

*Breach of contract not going to its essence—Breach compensable in damages*— The plaintiff, before the breach by the defendants, purchased certain supplies of another than the defendant ; but such purchase, if a breach at all, did not go to the essence of the contract, was compensable in damages, and does not defeat recovery. As the plaintiff performed in part substantially according to the terms of the contract, he is entitled to recover compensation for what he did thereunder.

*Finding supported by evidence*—The finding of the referee, that the defendants knew the financial condition of the plaintiff at the time the contract was made, is supported by the evidence reviewed in the opinion.

*Practice*—A concession, made by a party on trial, may properly be taken to be based on knowledge of the conceded fact.

ACTION OF ASSUMPSIT against Martin H. Gibson and John Gibson, partners under the firm name of the Ryegate Brick Company. Caledonia County, June Term, 1899, *Watson*, J., presiding. Heard on referee's report and exceptions thereto. Judgment *pro forma* for the plaintiff to recover $2441.03 and interest from November 15, 1894, with costs. The defendants excepted.

The case is stated in the opinion.

*E. W. Smith* and *Scott Sloane* for the plaintiff.

*Dunnett & Slack* for the defendants.

ROWELL, J.   By the contract in question, made and executed the 2d of March, 1894, the plaintiff was to furnish help, horses, and every thing else required to carry on the brick business that the defendants were not to furnish, and make for the defendants in their brick-yard, shaving the clay for that purpose, a million brick a year for five years, and as many more as the defendants wanted, at so much a thousand, packed on the cars. The defendants had "the privilege of furnishing" the plaintiff hay, provisions, and groceries, the price not to exceed what he would have to pay for the same grade of goods elsewhere; and all brick sold each month were to be paid for on the 15th of the following month.

The referee finds that at the time the contract was made, the plaintiff was a poor man, without the money, property, or credit necessary to employ and board the men and teams necessary to carry out the contract, and continued in the same financial condition up to the time this suit was commenced, which was known to the defendants when the contract was made and when they refused to furnish supplies as below stated. The finding that the defendants knew the plaintiff's financial condition at the time the contract was made, is challenged as not supported by the evidence. But we think it a warrantable deduction from what the referee says he based it upon.

The defendants saw the plaintiff in Gonic, N. H., where he lived, and there commenced negotiations with him; and the fact that as soon as he moved to Ryegate, which was the 3d of April, and before he could have done any work under the contract, the defendants, without, as far as appears, having learned anything new about him, and, as it were, as matter of course, began to furnish on credit all the provisions and supplies for his family, including his employees, and to pay his men, as the referee finds

they did, affords, of itself, pretty good ground for saying that they knew from the first that they would have to do that in order to enable him to go on with the contract.   And besides, their concession on trial that he had no money or property to carry on the contract except what he was entitled to receive thereunder from them, being unlimited as to time, and coupled with the fact that they did not claim by their testimony that they supposed otherwise when the contract was made, is capable of being construed to mean, and probably does mean, that he had no other means at any time, neither when the contract was made nor afterwards; and as the concession may properly be taken to have been based on knowledge, the referee might well have inferred that the knowledge and the concession were coextensive in point of time.

The defendants continued to furnish supplies and to pay help to and including September 15th, and refused to do either thereafter.   Up to this time the plaintiff had burned three kilns of brick, one in June and two in August, which produced, allowing the kilns to be alike, 1,162,500 brick, such as the contract called for; and on the 3d of September, he had, moulded, dried, and hicked in the yard, enough for another kiln, a part of which, at least, he packed in the kiln after September 15th, and the kiln was burned the latter part of October.   The plaintiff made 1,500,000 brick in all, such as the contract called for, which the defendants have sold and received pay for; but at the time suit was commenced, November 15, 1894, the defendants had sold less than half a million, leaving more than a million in the yard unsold; and those sold, with certain other items allowed the plaintiff, made his credit at that time, as the judgment was made up, $1904.41, and the defendants had paid him $2638.86, thus largely overpaying him on that basis; but the labor for making the brick left in the yard unsold came to $3173.48 more, as allowed by the referee, and those brick were sold mostly in 1895 and 1896, and before the 15th of September of the latter year.

Soon after the plaintiff commenced making brick, the defendants told him they could and would sell all he could make, and wanted him to make more than a million that season. Relying upon this, he employed more men, and made more brick than he otherwise would, fully believing that the brick so made would be sold mostly that summer and fall, and the rest of them by the time brick-making would commence in the spring.

On September 15th, when the defendants refused to make further advances, there were about 750,000 brick in the yard that the plaintiff had made, and he then notified them that he had nothing to eat, no money to buy provisions, none to pay his help, and must work somewhere to get something to live on unless they would continue to furnish supplies to enable him to go on with the contract. The defendants refused to furnish him, and claimed as an excuse, as the referee says, (1) that they were not obliged to do so under the contract; (2) that he had broken the contract by not shaving the clay; (3) that they had already advanced more than was due him under the contract; and (4) that they had advanced to him more than all the brick then manufactured by him would come to at the prices named in the contract.

The plaintiff plowed and picked most of the clay instead of shaving it, as the contract required. But the referee finds that the brick were just as good with the clay plowed and picked as they would have been with it shaved, and that the defendants consented to its being plowed and picked.

In November, shortly before suit was commenced, the plaintiff requested the defendants to furnish cars so that he could load brick and get some pay, or else to furnish supplies. In response to this, they furnished one car only, which was loaded with 10,200 brick on November 12th, which were credited to him; but they made no other advances.

The plaintiff claims that the refusal of the defendants on September 15th to make further advances, was a breach of the contract on their part, and that he was thereby both disabled

and discharged from further performance on his part.    That he was thereby disabled, clearly appears; and the question is, whether he was thereby discharged.

The defendants say that they were not obliged by the contract to furnish supplies, but could furnish them or not at their option, and were not in fault in not selling more brick and thereby supplying the plaintiff with means, and therefore committed no breach.

This makes it necessary to consider the substance of the contract as distinguished from its mere form, that we may give it a fair and just construction, and ascertain the substantial intent of the parties, which is the controlling consideration in construing agreements, and to which greater regard is to be had than to the precise words used.    *Ford* v. *Buch*, 11 Q. B. 869.    And the circumstances in which parties contract are to be looked at; and a construction will never be adopted that will give one party an unfair advantage over the other, unless such was their manifest intention when the contract was made.    *Russell* v. *Allerton*, 108 N. Y. 288.

It being established that the plaintiff's only means of carrying on the contract was what he received under it, and that this was known to the defendants at the time the contract was made, it must be taken to have been the mutual intention of the parties that he should receive from that source enough to keep him agoing.    Neither party could have intended less, for otherwise, as they knew, the purpose of both was sure to be defeated.

There were two ways under the contract, and only two, in which this intention could be carried out.    One was, for the defendants to furnish supplies; the other was, for them to sell brick and pay.    The first was the only way open until brick were made that could be sold, and then both ways were open.

In these circumstances, the law supposes it to have been the intention of the parties that the defendants, in one or the other or both of those ways, should do whatever was necessary to be done in order to provide the plaintiff with the means necessary

to enable him to go on with the work; and it construes the contract as imposing that duty upon them by necessary implication. This is but an application of the doctrine of implied covenants and promises. Thus, in *United States* v. *Speed*, 8 Wall. at page 84, it is said by Mr. Justice Miller, speaking for the court, that when, as there, the obligation of the plaintiff required an expenditure of a large sum in preparation to enable him to perform it, and a continuous readiness to perform, the law implies a duty on the other party to do whatever is necessary for him to do to enable the plaintiff to comply with the promise or covenant. But there the contract contained an express promise that the defendant should furnish what was necessary. Such an implication, when not external to the contract, but gathered from it, as it is in the case at bar, is as much a part of the contract as if set forth in express words. Harriman, Cont. 152.

But if we take another view, and put the case on the ground of allowing the defendants a reasonable time in which to sell brick, we come to the same result; for what is a reasonable time depends on the circumstances of the particular case, and here the circumstances were such that a reasonable time was inevitably a time seasonable to meet the necessities of the plaintiff and to enable him to prosecute the work; and when the defendants refused to furnish supplies, there then being plenty of brick in the yard unsold, the time for selling them had arrived, as that was the only way left by which the plaintiff could obtain the necessary means, and therefore it then became and was the duty of the defendants to adopt that way if they would not continue the other; but they did neither.

It cannot be said that their obligation to pay was wholly contingent on the actual sale of the brick. They were to pay on the 15th of the month following a sale; and after the lapse of a reasonable time in which to sell, they were bound to pay whether they had sold or not. Thus, in *Nunez* v. *Dautel*, 19 Wall. 560, the debtor promised to pay as soon as he sold a certain crop or otherwise raised the money; and it was held that he was bound

to pay after the lapse of a reasonable time, whether he had sold the crop or otherwise raised the money or not.

But the defendants say that if they were bound to furnish supplies they had a right to furnish all of them, and that the plaintiff's purchase of some of Beattie was a breach on his part. It appears that during the summer the plaintiff bought more or less goods of Beattie, and on the 14th of September assigned to Beattie on account thereof. what was due or to become due to him from the defendants to the amount of $190. But the defendants refused to recognize the assignment, and have never paid anything upon it.

The goods that plaintiff bought were necessary supplies, required and used by him in boarding his family and the men employed in making brick, and were very largely such as the defendants did not have in stock when wanted by him. But this, if a breach at all, did not go to the essence of the contract, and was compensable in damages, and so will not defeat recovery. 7 Am. & Eng. Ency. Law, 153 ; Benjamin's Princip. Cont. 139–40 ; *Noland* v. *Whitney*, 88 N. Y. 648.

But as the defendants' breach went to the essence of the contract, it operated as an external condition subsequent, and entitled the plaintiff to be discharged from further performance on his part ; and as he has performed in part substantially according to the terms of the contract, he is entitled to recover compensation for what he did thereunder. *Chamberlin* v. *Scott*, 33 Vt. 80 ; *Chicago* v. *Tilley*, 103 U. S. 146.

These views being decisive, no other questions need be considered.

As it is not suggested but that the judgment below is correct in amount if any is to be rendered for the plaintiff, that

*Judgment is affirmed, and judgment rendered for the amount thereof, with interest thereon during stay of execution, and additional costs.*