## STANDARD FASHION CO. *v.* H. H. THOMAS.

### November Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 4, 1923.

*Principal and Agent—Partial Failure to Meet Payments for Goods Delivered on Agency Contract—Effect of Breach by Principal of Provisions of Contract—Stipulation as Permitting Judgment Against Plaintiff Although No Declaration in Set-off Filed.*

1.  In an action for the breach of an agency contract for the handling of patterns, plaintiff's claim being that the defendant agent had failed to pay in full for the several monthly shipments of goods on the days they became due, until an aggregate of $67.10 remained unpaid on such several shipments, covering a period of seven months, *held* that the several failures to pay in full did not go to the essence of the contract, and that the partial failure to pay on the day full payment became due, after the sale and delivery of the goods, was not a repudiation of the contract by defendant and did not afford the plaintiff any ground on which to justify future non-performance.

2.  The provision in an agency contract relating to the handling of patterns that allowed the agent to return discarded patterns semi-annually, within specified periods, in exchange for new patterns, was a material one, and as the agent must act upon instructions from the principal as to what patterns should be discarded and returned, there was an implied obligation resting upon the principal to furnish the agent with such information, which went to the essence of the contract, and when the principal failed and refused to furnish the agent on his request, with the required information to show what patterns he was entitled to discard at a discard period, it constituted a breach of the contract by the principal which justified its termination by the agent.

3.  An agency contract with a pattern company made provision for its termination by either party upon a specified notice, at

the expiration of which the agent agreed to return to the company all patterns then on hand and the latter was to credit him on receipt with three-fourths of their cost and pay him any balance due, in cash, within a specified time thereafter. *Held* that where the company failed to comply with the provisions as to termination, but, without justification, repudiated the contract, and in an action sought to recover an amount claimed to be due from the agent on account, the defendant was entitled to the credits given him by the contract in the adjustment, between the parties, of the affairs of the agency at its termination.

4. Where the record before the Supreme Court showed an agreement by the parties that the case should be tried and determined upon the agreed statement of facts and the exhibits made a part thereof, the force of such agreement is that the trial and determination should be as warranted by the agreed facts, treating the pleadings as sufficient therefor, hence the defendant may recover against the plaintiff in excess of the latter's claim and have judgment therefor, notwithstanding that defendant has filed no declaration in set-off.

ACTION OF CONTRACT. Plea, the general denial, and a statement of the facts relied upon in defense. Trial by the St. Albans City Court, *Nathan N. Post*, J., upon an agreed statement of facts. Judgment for the plaintiff. The defendant excepted. The opinion states the case. *Reversed and judgment for defendant.*

*G. F. Ladd* for the defendant.

*Wallace B. Locklin* for the plaintiff.

STATEMENT. By the terms of the contract in question, entered into April 20, 1917, the plaintiff granted to the defendant an agency for the sale of Standard Patterns "for a term of three years from September 30, 1915, and from term to term thereafter until this agreement is terminated, as hereinafter provided," and agreed to sell and deliver f. o. b. New York, to defendant, Standard Patterns at certain discount from retail prices, to allow him to return discarded patterns semi-annually, between

January 15 and February 15, and July 15 and August 15, in ex-
change, at 9/10 cost, for other patterns to be shipped at the time
of return or thereafter, patterns returned for exchange must
have been purchased by defendant of plaintiff direct and must
be delivered in good order at its general office in New York.   In
consideration thereof defendant agreed to purchase from plain-
tiff, for free distribution, Standard fashion sheets to a number
not less than 3,000 per annum, and handy catalogues to a number
not less than 50, ''to pay transportation charges on all goods
ordered or returned under this agreement''; to purchase and
keep on hand at all times, except during the periods of exchange
specified, $250 value in Standard patterns at net invoice prices,
and to pay plaintiff for a pattern stock of the amount stated,
terms of payment to be $125 at time of signing the contract, the
balance of the purchase price $125 to remain unpaid at a stand-
ing credit, to bear interest at three per centum, during the con-
tinuance of the agreement, and to become due and payable at
its termination; ''all other purchases to be paid for on or before
the 15th day of the month succeeding the date of shipment.'' The
contract further provided that either party, desiring to terminate
the agreement, ''must give the other party three months notice
in writing, within thirty days after the expiration of any con-
tract period as above specified, the agency to continue regularly
during such three months''; that upon expiration of such notice,
defendant agreed to promptly return to plaintiff all Standard
patterns bought under the contract and then on hand, which it
agreed to credit on receipt in good order at three-fourths cost,
paying defendant, within thirty days after receipt of same, in
cash, any balance due.   Defendant not to sell or permit to be
sold on his premises any other make of patterns.

On the execution of the contract or previous thereto, the
plaintiff received from defendant the sum of $125 in payment of
the one-half of the cost of the pattern stock that defendant
agreed by the terms of the contract to purchase and keep on
hand, and the plaintiff sold to defendant a pattern stock of $125
in value, net prices, leaving a balance due from defendant to
plaintiff of $125, the amount of the standing credit mentioned in
the written contract.   Thereafter plaintiff sold and delivered to
defendant from time to time on a regular standing order, to
keep the pattern stock up to date, and defendant accepted

Standard patterns, fashion sheets, and handy catalogues in accordance with the terms of the written contract, up to and including the month of March, 1918, and defendant accepted from plaintiff and put into his stock of patterns in his store all the Standard patterns, fashion sheets, and handy catalogues ever shipped or delivered to him by plaintiff after the contract was entered into. The defendant from time to time, up to and including the 29th day of April, 1918, gave plaintiff special orders for patterns, and such orders were filled by plaintiff, and all patterns so ordered were accepted by defendant and put into his stock of patterns; but after the date named defendant gave no special orders, and plaintiff delivered no patterns to defendant on any such special orders.

During such agency and up to October 24, 1918, except at the exchange periods specified, defendant kept on hand a stock of Standard patterns, purchased from plaintiff, the cost price of which was more than $250, and at all times between such dates, offered them for sale to his customers. On July 19, 1917, defendant returned to plaintiff all discarded patterns from his stock that he was instructed by plaintiff to return and discard at the discard period beginning July 15, 1917, and on the 8th day of February, 1918, he returned all discarded patterns that he had been instructed by plaintiff to discard at the discard period beginning January 15, 1918, all which returned patterns plaintiff accepted and gave defendant credit therefor on his exchange account, the amount of the first lot so returned being $90.25, and of the second lot, being $92.79, aggregating $183.04. Plaintiff furnished defendant new patterns in exchange therefor, of the value of $164.99, leaving a balance due defendant on the exchange account of $18.05, for which plaintiff has never furnished new or any other patterns to defendant.

At the time of the next discard period, namely, between July 15, 1918, and August 15, following, the plaintiff, although requested to do so by defendant, failed and refused to furnish him with a discard sheet, or in any manner the information required to show what patterns he was entitled to return and receive credit for, and at that time and ever after refused to accept any discarded patterns from defendant, claiming as a reason for such refusal that defendant had failed and refused to pay for

goods delivered to him during a period of seven months as provided in the written contract.

After the 29th day of April, 1918, the plaintiff never sold, shipped, or delivered to defendant any of the goods mentioned in the written contract, which by the terms thereof it agreed to sell and deliver to him, claiming that defendant was in default under the contract by reason of not paying the sum of $67.10, which, plaintiff claims had accumulated during a period of seven months, a part of which was several months overdue, for goods sold him. He has never paid that sum to plaintiff for current purchases, nor the sum of $125, standing credit.

October 24, 1918, defendant shipped to the plaintiff in good order all Standard patterns he then had on hand, which had been sold to him under the terms of the contract, and the plaintiff in due course received them within a few days after the time of shipment, retained the same "for some time in its possession," subsequently notifying defendant that it refused to accept said patterns, and delivered the same to a common carrier to ship to defendant. These patterns have never been delivered to defendant by the carrier, but on tender of delivery by such carrier he refused to accept them. The cost price of this lot of patterns so returned by defendant to plaintiff was $409.02.

WATSON, C. J.    The record shows an agreement by the parties that this case should be tried and determined upon the agreed statement of facts and the exhibits made a part thereof. We understand the force of this to be that the trial and determination should be as warranted by the agreed facts, treating the pleadings as sufficient therefor, and we proceed accordingly.

The plaintiff contends that on the facts and exhibits so of record defendant is indebted to it in the aggregate sum of $198.25, for goods sold and delivered to him under the contract of agency, together with items of interest. (on the standing credit) and charges for transportation, both also provided for by the contract, on the ground that he breached the contract in not paying the sum of $67.10, which plaintiff says had accumulated during a period of seven months, and because of such breaches he elected to terminate the contract, which resulted, plaintiff claims, in loss to defendant of the privilges of returning patterns for credit, full performance for the entire term, plain-

tiff further claims, being a condition precedent to the right so to return patterns at all. That the record shows items of indebtedness from him to plaintiff by the terms of the contract, amounting to the sum first named, defendant does not deny; but he says the record also shows that he is entitled to recover of plaintiff the sum of $306.76, it being 75% of the cost price of the patterns returned by him on October 24, 1918, and also the sum of $18.05, for discarded patterns previously returned to and accepted by plaintiff but for which the latter never delivered new patterns in exchange, the total amount so due him being $324.81, with interest; further claiming the right to have this sum set-off against any sum found due to plaintiff, and to have judgment for the amount remaining due after such set-off is made.

[1]    The contention that defendant's failure to pay in full for the several monthly shipments of goods on the days they became due were breaches that went to the essence of the contract and relieved the seller from further performance, cannot be sustained. It appears that $67.10 was the aggregate of the sums unpaid on such several shipments, covering a period of seven months. The shortage for any particular month, or months less than the whole number, does not appear, nor does it appear that there was such shortage in each and every month of the seven, nor of which months if less than all. It should seem that each month's shipment was in part at least paid when due; and it is not pointed out how an accumulation of partial defaults of that nature can be said to go to the essence of the contract and relieve the other party from further performance. The partial failure to pay on the day full payment became due, after the sale and delivery of the goods, was not a repudiation of the contract by defendant, nor did it afford the plaintiff any ground on which to justify future non-performance. *Martindale* v. *Smith,* 1 Q. B. 389; *Daley* v. *Peoples' Building, etc., Assn.,* 178 Mass. 13, 59 N. E. 452. No separate partial breach, if acted upon by the other party within a reasonable time, is shown to have been of sufficient importance to justify treating the whole contract as terminated and as being transformed into a right of action for damages. 3 Williston on Cont. Sec. 1290.

Although defendant gave no special orders for goods after April 29, 1918, his regular standing order on which plaintiff, from time to time, had sold and delivered to him goods to keep

his stock of patterns up to date, was not revoked, but remained in force and could have been acted upon by plaintiff. Defendant accepted all patterns ever shipped or delivered to him; and until October 24, 1918, except at the specified exchange periods, he kept on hand a stock of patterns purchased of plaintiff, the cost price of which was more than required by the terms of the agreement, at all times offering them for sale to customers.

[2]    One of the material provisions of the contract was that allowing defendant to return discarded patterns semi-annually, within specified periods, in exchange for new patterns. It was for the interest of both parties that defendant's stock be kept up to date, to the end that only the latest styles be included, thereby maintaining their favorable reputation, and realizing satisfactory results in competing with other makes of patterns. It goes without saying that the defendant must act upon instructions from the plaintiff as to what patterns in his stock should be discarded and returned. He could not be expected to acquire the necessary information from any other source. The contract in this respect could not be carried out as was obviously contemplated by both parties that it should be carried out, without plaintiff's furnishing the defendant with such information in season for him to act in the matter at each discard period, and since the furnishing of this information at the times mentioned was not expressly provided for in the agreement, there was an implied obligation therein resting upon the plaintiff so to do. *Rioux* v. *Ryegate Brick Co.*, 72 Vt. 148, 47 Atl. 406; *Ambrosini* v. *Pellaggi & Co.*, 94 Vt. 119, 108 Atl. 916. This implied obligation went to the essence of the contract, and when the plaintiff failed and refused to furnish defendant, on his request, with the information required to show what patterns he was entitled to discard and return at the discard period between July 15, 1918, and August 15, following, it was a breach of the contract by plaintiff which justified the termination of it by defendant. The Rioux case is full authority for this holding. The actions of the plaintiff in this respect made manifest that it was not going to perform the contract in the future, as it in fact did not, and this constituted the first substantial breach by either party. Moreover, its non-performance of this implied provision must have operated to prevent defendant from keeping the

quality of his stock of patterns up to date, and consequently prevented him from the required performance in this respect.

[3]    The contract contains a provision whereby it could be terminated by either party by giving notice in writing to the other within a specified time after the expiration of any contract period, the agency to continue during such three months; and upon the expiration of such notice, defendant therein agrees to return promptly to plaintiff all patterns then on hand, which plaintiff agrees to credit him on receipt at three-fourths cost, paying him within thirty days thereafter in cash, any balance due.    Instead of terminating the contract in the manner and at the time thus pointed out, the plaintiff, outside the time specified and without justifiable cause, repudiated it, giving defendant no notice thereof other than by its acts in failing and refusing to perform, as stated above.    Within its scope, the provision giving defendant the right to return all patterns on hand at the end of the agency and receive credit therefor, the balance to be paid by plaintiff in cash within a time limited, was binding on the parties, and the benefit thereof to defendant could not be circumvented by plaintiff's wrongful repudiation of the agreement, thereby ending it in some other manner.    Plaintiff bases its right of recovery upon the terms of the contract of agency.    It claims under that contract for goods sold and delivered in the execution of the agency.    In like manner defendant has a right to the credits given him by that agreement in the adjustment, between the parties, of the affairs of the agency at its termination.

[4]    It is said, however, that if it be held that defendant is entitled to have his claim allowed, it can go only to the extent of plaintiff's claim, for the reason that no declaration in set-off, asking for judgment, has been filed.    But as stated in the first paragraph of this opinion, this position is obviated by the agreement of the parties.

*Judgment reversed and judgment for defendant to recover the sum of $126.56 with interest from November 26, 1918, to the day of payment, and his costs.*