AMERICAN STEEL AND IRON COMPANY, INC., Plaintiff, v. L. B. FOSTER CO., INC., Defendant. (Action No. 1.)*

L. B. FOSTER COMPANY, Plaintiff, v. AMERICAN STEEL AND IRON COMPANY, Defendant. (Action No. 2.)*

Supreme Court, Albany County, August 18, 1932.

*Affd., 238 App. Div. 882; 262 N. Y. 623.

*Abraham L. Doris*, for American Steel and Iron Company.

*Edwin A. Falk* and *Kenneth S. MacAffer*, for L. B. Foster Co.

HASBROUCK, Official Referee. The automobile dominates much of our commercial life. It has put most of our street railways out of business. The railway which ran in and along the highway from the city of Hudson to the village of Rensselaer was one which succumbed to that dominance. That railway was owned by the Eastern New York Utilities Corporation. December 11, 1930, it sold, among other things, its rails and angle bars to the plaintiff in this action, the American Steel and Iron Co., under a contract, one of the terms of which was that when every ton of rails was moved from the roadbed to storage, the American Steel and Iron Co. would pay the Utilities Co. five dollars a ton. The Steel Co. was in the scrap-iron business and the selling of rails, and in February, 1931, negotiated a sale of the Utilities Corporation rails and angle bars to the L. B. Foster Co., the defendant. The terms of the agreement to sell and purchase were that the Steel Co. was to deliver the rails and angle bars for inspection at storage places to the Foster Co., or upon sales to third parties designated by the Foster Co. F. O. B. at Rensselaer, Niverville, and Upper Hudson. The price to be paid was sixteen dollars a gross ton for eighty-pound and sixty-pound rails and angle bars and fourteen dollars a

ton for seventy-pound and fifty-six-pound rails and angle bars, and the Foster Co. was to pay five dollars a ton upon such storage and the contract price upon deliveries to third parties. The whole unpaid contract price was to be paid September 15, 1931. The quantities covered by the sale were estimated. The plaintiff actually placed in storage 4,387 plus tons of rails and angle bars under the contract, and delivered to third parties various consignments amounting to 292 plus tons or 193 plus net tons. The defendant has refused to pay for the rails and angle bars stored except that it has paid five dollars on storage piled and billed to June 16, 1931, and has refused to pay $3,090 for rails and angle bars, sold and delivered to third parties on orders given during July and August. The sales aggregating $3,090 consisted of 292 plus gross tons less tare constituting 193 plus net tons and is illuminating on the question of the damages. The reason assigned by the Foster Co. for its failure to pay is that the plaintiff agreed with it to furnish leases for storage places in the name of L. B. Foster Co. to run for one year. The exact language is " leases in the name of the L. B. Foster Co. to cover suitable storage spaces for storing these rails." This language contemplates the future " for storing." The rails had not been stored on February 24th when the contract was signed.

The plaintiff endeavored to get leases for storage. It got a lease at Niverville, and that lease it did not take in the name of the L. B. Foster Co. It failed to get leases as well for storage at Rensselaer and Upper Hudson prior to the time the salvaging operations began under the contract it had with the Utilities Corporation. The Steel Co. promised the leases and the Foster Co. paid on account of deliveries at unleased storage places five dollars per ton. On or about June 12th, the question of producing leases was brought sharply to the attention of Resnik, president of the plaintiff; and he and Foster, vice-president of the defendant, undertook to see the president of the Utilities Co. at Albany in relation to the matter, but saw, instead, Judge LeBoeuf, the counsel of the Utilities Co. He told his visitors that there would be no leases given but that the agreement between the Utilities Corporation and the plaintiff contemplated storage — but that there was no term for storage fixed in such agreement. Then on or about June 12th, Foster and Resnik went to Rensselaer, Niverville and Upper Hudson, and with Gilson representing the Utilities Corporation, looked at the storage places then mapped which were to be furnished the plaintiff, and vice-president Foster expressed his satisfaction with the same and thereafter the Foster Co. paid on June 16th, $1,390 on account of deliveries under the terms of the contract. On an invoice of June 29th, however, in a letter of July 4th, it refused to pay the five

dollars per ton assigning as a reason the failure to furnish leases as provided in the contract.

The plaintiff under its contract with the Utilities Co. was obliged to continue its salvaging and pay for the rails and angle bars the contract price of $70,000 on August first, but later plaintiff refused to fill some shipping orders sent in by the defendant. As the matter stood on or about the first of September, the defendant had refused to make its payments on storage and piling and the plaintiff had refused to fill further shipping orders and had failed to provide leases. Whether the plaintiff's failure to furnish leases as provided by the contract constituted a failure to substantially perform the .contract is the question to be decided. The total estimate of the amount to be paid for materials purchased by the defendant was upward of $60,000. Of total rental to be paid for the leases defendant agreed to furnish $200. What the contract required was storage facilities. That such facilities should be covered by leases instead of tenancies by will, licenses, or privileges was under the circumstances a detail. When once so great a tonnage of such unwieldy objects as abondoned railroad rails was piled with permission on the seller's grounds or grounds selected by it, the purchaser could not be compelled to remove such rails except within a reasonable time. The satisfaction of the defendant with the storage arrangements has heretofore been pointed out. At the time of the trial the rails in question were still resting on storage places selected by the plaintiff and the Utilities Corporation, and approved by Foster. The defendant suffered no financial loss from plaintiff's failure to supply leases. It saved $150. So that the real difficulty — the real cause of disagreement must be found in another source than failing to provide leases. The bargain made by the Foster Co. was a bad one. It was made in a period of deflation when the wheels of industry in the United States had commenced to slow up and the defendant for the reason that relaying rails had depreciated in market price, sought to keep a way open against its responsibilities on this contract. If the market for relaying rails had risen instead of fallen it is not likely that there would have been a question about storage facilities. Under the circumstances it was natural that the defendant should seek relief from a burdensome contract. There is no question here of good faith. Both parties carried on in the hope of a satisfactory termination of the contract relationship. The defendant contends that the furnishing of the lease is a substantial requirement of the contract or condition precedent to recovery by the plaintiff. The plaintiff contends that such requirement does not go to the substance of performance and that the defendant has waived the furnishing of the leases. The question whether substantial per-

formance had been made by a party to a contract is one of fact. Where one party is found to have substantially performed his contract and it has been breached by the other party the party substantially performing is entitled to damages sustained by the breach. (*Kauffman* v. *Raeder*, 108 Fed. 171; *Clark* v. *West*, 137 App. Div. 23; *Westerman* v. *Champion Fibre Co.*, 162 N. C. 294; *Rioux* v. *Ryegate Brick Co.*, 72 Vt. 148; *Emigrant Co.* v. *County of Adams*, 100 U. S. 61; Williston Cont. § 841, and cases cited.)

The defendant by failing to pay has breached the contract. I think the title to the rails and angle bars passed into the defendant when they were piled in storage (Pers. Prop. Law, § 144; *Boiko & Co.* v. *Atlantic Woolen Mills*, 195 App. Div. 207), and that the remedy of the plaintiff upon the breach was to retain possession and ownership of the goods and claim damages for the defendant's refusal to pay the contract price, viz., the difference between the agreed price and the market price September 15, 1931. Such damages I have determined to be $10,984.15 with interest from such date. (Pers. Prop. Law, § 145.)

The complaint on the action brought by L. B. Foster Co., Inc., against the American Steel and Iron Co., Inc., for claimed advanced payments made under the contract is hereby dismissed.

The plaintiff should have one bill of costs.

Proposed findings on the part of the defendant and the findings on the part of the plaintiff should be submitted on or before August 15th.