The UNITED STATES of America for the Use and Benefit of BROWNE & BRYAN LUMBER CO., Inc., Plaintiff-Appellee,

v.

MASSACHUSETTS BONDING AND IN-SURANCE COMPANY, Defendant-Appellee,

and

Ove Gustavsson Contracting Co., Inc., Intervenor-Appellant.

No. 271, Docket 27343.

United States Court of Appeals Second Circuit.

Argued March 28, 1962.

Decided June 7, 1962.

See also 29 F.R.D. 162.

William V. Homans, New York City, (Philip G. Fitz, New York City, on the brief), for plaintiff-appellee.

Max J. Le Boyer, Brooklyn, N. Y., for defendant-appellee.

Anthony B. Cataldo, New York City, for intervenor-appellant.

Before MEDINA, SMITH and HAYS, Circuit Judges.

MEDINA, Circuit Judge.

There are two appeals before us. The first involves the merits in an action in effect for goods sold and delivered, with a counterclaim for damages for alleged delay, delivery of defective material and a congeries of miscellaneous subsidiary and related claims. The trial judge granted judgment for the amount agreed to be paid for the goods, less an allowance of $388.50 expended in the replacement of a small amount of damaged lumber; and he dismissed the counterclaim in its entirety. The second appeal is from an order granting a motion by an alleged co-appellant to strike its name from the notice of appeal because it had not authorized the appeal to be taken. The opinion below is reported at 195 F.Supp. 26.

The proliferation of issues, the numerous briefs, appendices, letters and memoranda, and the fact that some eight motions have been made by appellant in this Court during the pendency of the appeals, make it desirable, we think, to state in simple, chronological sequence the development of the controversy and its

progress after the commencement of the action. We shall insert a few parenthetical comments for the purpose of disclosing the sequence of events as an integral whole. The action is by a materialman under the Miller Act, 40 U.S.C.A. §§ 270a, 270b, against the surety for the principal contractor. The same attorney represented both the surety and the principal contractor throughout, and, some time after joinder of issue the principal contractor was permitted to intervene and assert its counterclaim or set-off against the subcontractor-plaintiff.

On December 12, 1958 appellant Ove Gustavsson Contracting Co. Inc. contracted with the United States to furnish all labor, equipment and materials for the repair of the sea wall and replacement of fenders on Pier G in the Brooklyn Navy Yard. A performance bond of $158,768 and a payment bond of $79,384 conditioned for the prompt payment of all persons supplying labor and materials in connection with the contract were required and were executed and delivered by Massachusetts Bonding and Insurance Company and accepted by the Government.

The contract with the subcontractor, as found by the trial judge, is an exhibit written on the letterhead of the materialman-plaintiff, Browne & Bryan Lumber Co., Inc., under date of January 29, 1959 and signed by Gustavsson on February 2, 1959. The lumber to be delivered and the necessary details relative to sizes and fabrication are set forth, delivery to start "in five or six weeks and complete within 90 days, weather conditions permitting with a proposed delivery schedule of approximate [sic] one third of schedule per month." Hereafter we shall refer to the parties as Gustavsson, the Lumber Company and the surety.

There was a subsequent order for additional lumber on September 16, 1959, covered by an invoice of October 6, 1959. The pertinence of this relates only to one of the many peripheral issues, as to whether a payment of $2,000 by Gustavsson to the Lumber Company on December 11, 1959 was of the amount or part of the amount due for the additional order or on account of the large balance due for deliveries of lumber pursuant to the terms of the contract of January 29, 1959.

The substance of the state of affairs before the commencement of the action by the Lumber Company against the surety was that the Lumber Company had a claim for $25,848.25 for goods sold and delivered, against which it had received only three payments of $2,000 each, on August 5, 1959, September 4, 1959, and December 11, 1959. The last delivery of lumber on the job was August 13, 1959; and it was conceded at the trial that the lumber was used on the job by Gustavsson. The Government paid Gustavsson the full amount specified in its contract, $158,768, plus $37,025 for extras, or a total of $195,793, without any penalty for delay. And yet the claim of the Lumber Company remained unpaid. Other materialmen were also clamoring for the money due them.

After getting little or no satisfaction out of Gustavsson, the Lumber Company wrote the surety on January 5, 1960 complaining of the delay, and the reply of the surety on January 12, 1960 was to the effect that Gustavsson was "in no financial difficulty and that this indebtedness will be cleared up in due course." It was not cleared up, however, and the Lumber Company commenced this action on April 6, 1960.

Despite the fact that the Miller Act was designed to provide a prompt means of satisfying the claims of those furnishing labor and materials for use on construction or repair work for the Government, this litigation is still in progress and the record before us discloses a pattern of dilatory tactics, including the series of delaying moves in this Court, that is much to the discredit of the administration of justice. Moreover, in retrospect it is difficult to see how much of this could have been avoided, as it was not until the lapse of twelve full days of trial before an exceptionally patient and considerate judge that the testimony

of both Ove Gustavsson, President of Gustavsson, and its other principal witness was found to be false, and Gustavsson's documentary evidence branded as dubious and unreliable.

The answer of the surety was not filed until August 30, 1960. The attorney was the same attorney who later represented Gustavsson on the motion to intervene, and who acted as counsel at the trial for both the surety and Gustavsson. No jury trial was demanded at the time of filing the answer of the surety. In this answer it was alleged as a defense that the lumber was not delivered in time, that when it was delivered it was damaged and in a raw and unfabricated condition and that Gustavsson had rejected it. It was also alleged by way of defense that the District Court had no jurisdiction of the case, that the Lumber Company had no capacity to sue and that Gustavsson was an indispensable party.

As early as September 6, 1960, as disclosed by the papers on file in the case, Ove Gustavsson, President of Gustavsson, signed and swore to the affidavit annexed to the notice of motion later made for an order permitting Gustavsson to intervene. This notice of motion was originally dated September 6, 1960 but was partially erased and November 26, 1960 substituted. The reason for waiting to serve the motion papers on the motion to intervene is all too plain. The attorney thought he had an ace in the hole, a possible means of obtaining substantial further delay, in the form of a demand for a jury trial to be stated in the "Intervenor's Plea," the pleading attached to the notice of motion and proposed to be served if Gustavsson's motion for leave to intervene should be granted; and it was thought expedient to delay the making of the motion until other dilatory maneuvers had failed.

The Lumber Company noticed the case for trial and filed a statement of readiness. The attorney for the surety filed an affidavit of non-readiness in which no mention is made of any forthcoming motion to intervene or of any demand for a jury trial. Judge Rayfiel held a hearing on November 22, 1960 and declared the case ready.

The motion to intervene, while returnable on December 7, 1960, was not argued before Judge Mishler until December 21, 1960. In the meantime, the customary pre-trial conference was held before Judge Bartels on December 16, 1960, and the case was set down on the non-jury calendar for the week of January 19, 1961, "the case to be tried when reached." True it is that Judge Bartels was informed that Gustavsson "is moving to intervene," but nothing was said of the fact that the motion papers had been prepared long prior to the time Judge Rayfiel marked the case ready for trial, but had been held in reserve.

January 5, 1961, Judge Mishler granted the motion to intervene on condition that Gustavsson waive a jury trial and be ready for trial when the case appeared on the calendar for trial. The waiver was filed, but the imposition of this condition is one of Gustavsson's points on the appeal from the judgment.

The "Intervenor's Plea" amplifies what was alleged in the answer prepared by the same attorney and filed on behalf of the surety. Instead of alleging that the lumber was rejected, however, Gustavsson asserts that in order to induce Gustavsson to accept damaged, defective and unfabricated lumber the Lumber Company agreed to pay Gustavsson the fair and reasonable cost of dressing and fabricating the lumber, to "furnish whole lumber in exchange for and in place of the lumber received in damaged condition," and to pay damages for delays in delivery. Without attempting further to amplify the details, the "Intervenor's Plea" concludes with a demand for judgment against the Lumber Company in the sum of $23,500.

After a careful scrutiny of the testimony and the large number of exhibits Judge Byers decided that he did not believe the witnesses who testified on behalf

of Gustavsson. He found this testimony "unconvincing." He described the testimony of the principal witnesses as "synthetic." The most charitable view of what Judge Byers thought of the Saladino Log and Exhibit K, strongly relied upon by Gustavsson on this appeal, is that they were wholly unreliable supports for Gustavsson's fantastic claims.

■■ As Judge Byers credited the testimony of the witnesses for the Lumber Company and did not believe the testimony of Gustavsson's witnesses, we are at a loss to discover any basis for a reversal of the judgment on the merits. True it is that Gustavsson himself and Saladino, his engineer, were ready at all times to say they saw this and saw that, or had conversations with various persons, and much of this is not contradicted in the sense that witnesses were called to controvert every detail of what these witnesses testified to. The fact remains that Judge Byers rejected their testimony on the ground that he did not believe it and no phase of the testimony thus rejected can be considered by us as a basis for setting aside a finding as clearly erroneous. Moreover, contrary to the assertion of counsel, it is the law that testimony deemed not credible may be disregarded by the trier of the facts, even though such testimony has not been stricken from the record.

In view of the general atmosphere of confusion that seems to have settled upon the case, as revealed in the numerous briefs, letters and memoranda filed with us prior and subsequent to the oral argument, and the persistence with which counsel for Gustavsson has made various and sundry representations and claims to the effect that the rejection of Gustavsson's counterclaim is unjust and not to be sustained on the law or the facts, we have been at particular pains to study the whole transcript of the trial and the exhibits, as well as the briefs, letters and memoranda. The result is that we are convinced by the record as a whole that there is no basis upon which we could set aside any of the findings as clearly erroneous. Indeed, we do not see how the trial judge could very well have arrived at a different conclusion.

■ It would be a tedious and unprofitable task to attempt to discuss the pros and cons of the large number of miscellaneous issues of fact. We shall, however, make brief reference to a few of the basic ones.

There was some delay in the delivery of the lumber. Some of this was due to weather conditions, as testified by the witness Jacoby; and some was due to agreed changes in the size of the holes to be bored. No credible evidence was submitted by Gustavsson to establish the amount of delay attributable to the Lumber Company or to establish any damages arising out of such delay.

One of the principal issues of fact related to an oral agreement made on May 28, 1959, relative to the boring of the holes in the lumber. It was Gustavsson's claim that he was to take over the boring of the holes and that the Lumber Company agreed to pay the reasonable cost of doing the boring. The Lumber Company's witness Anderson, on the other hand, testified that Gustavsson was to take over the boring of the holes and that the Lumber Company would not charge for the drilling of the holes. As Jacoby, who was also present at the conversation, put it, the "charge was being eliminated from the contract." This meant a credit to Gustavsson of $1875, at the contract rate of 20 cents per hole, which the Lumber Company allowed in calculating the sum for which suit was brought. As the trial judge rejected Gustavsson's testimony, there resulted Finding 7 to the effect that the agreement claimed by Gustavsson was not made and the modification did no more than eliminate, from and after May 28, 1959, the 20 cent per hole charge to be made according to the original arrangement.

Gustavsson also claimed that the lumber was not delivered in units, so that each unit could be conveniently assembled for each of the numerous "bays" on the

pier. The answer to this was that the contract made no provision for deliveries in units, nor were the circumstances such as to give rise to any such agreement by implication.

The crux of the case is Finding 8, as follows:

"The plaintiff delivered to the defendant the timbers described in Plaintiff's Exhibit 3 according to the terms of the contract as modified according to Finding No. 7, with the exception of a few timbers that had to be replaced." [1]

■ What Gustavsson's inflated and unsubstantiated counterclaim of $23,500 boiled down to was about 2100 feet of damaged lumber that were replaced by Gustavsson at a cost of $388.50, and this amount was deducted by the trial judge from the judgment awarded against the surety. On this state of the record we think the trial judge quite properly applied the doctrine of substantial performance. See United States ex rel. Johnson v. Morley Const. Co., 2 Cir., 1938, 98 F.2d 781, cert. denied, Maryland Casualty Co. v. U. S., 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed. 421; Inhabitants of City of Plainfield v. Palmer, 3 Cir., 1934, 72 F.2d 312; American Steel & Iron Co. v. L. B. Foster Co., Sup.Ct. 1932, 148 Misc. 727, 266 N.Y.S. 800, aff'd, 1933, 238 App.Div. 882, 262 N.Y.S. 1008, aff'd, 262 N.Y. 623, 188 N.E. 92; compare N.Y. Personal Property Law § 150.

■ Continuing our chronological summary we come to a bitter controversy that arose between Gustavsson, or its attorney, and the surety after the entry of judgment. On the basis of what the attorney for Gustavsson or Gustavsson's president had represented the facts to be the surety authorized Gustavsson's attorney to defend the action on its behalf and he did so. It was this same attorney, as we have already said, who filed the motion of Gustavsson to intervene and who actively represented both the surety and Gustavsson at the trial. When it turned out at the trial that Gustavsson's representations were not substantiated and that there appeared to be little likelihood that this Court would reverse an experienced and able trial judge on the ground that his findings of fact based upon the credibility of witnesses were clearly erroneous, there very naturally arose the question of whether the surety would authorize an appeal and perhaps throw good money after bad.

The attorney urged the surety to authorize him to appeal to this Court on behalf of the surety. The reply was that the surety would not do this unless furnished with full cash collateral. No such collateral was forthcoming. But the attorney appealed just the same, and he did so on behalf of both Gustavsson and the surety. The surety promptly moved to delete its name from the notice of appeal. The motion was vigorously opposed, on the ground, among others, that the District Court had no jurisdiction to decide the matter. The motion was thereupon referred to Judge Byers, who took the matter under advisement and filed an interim memorandum suggesting clarification of the attorney's position. The only clarification that was forthcoming was an affidavit on behalf of the surety reiterating its position that it had not authorized the appeal on its behalf, together with a stipulation substituting Max J. Le Boyer for Arthur H. Hayum, the former general counsel for the surety, who had died, and reference was made to the following clause of the indemnity agreement between Gustavsson and the surety:

"The Company shall have the exclusive right to decide and determine

---

1. Prior to the execution of the contract of January 29, 1959, referred to in an earlier portion of this opinion, there was a letter (Exhibit 2) from the Lumber Company to Gustavsson of December 15, 1958, making certain quotations. On this letter Gustavsson had written "OK to proceed with ordering lumber hold fab. for confirmation." Exhibit 3 is another letter from the Lumber Company to Gustavsson of January 16, 1959 enumerating the items of lumber. The necessary details for fabrication appear in the contract of January 29, 1959 (Exhibit 5).

whether any claim, demand, liability, suit, action, order, judgment or adjudication, made or brought against the Company on the bond or bonds herein applied for, shall or shall not be defended, tried or appealed, and its decision shall be final, conclusive and binding upon the undersigned, and any order, judgment or adjudication made, entered or affirmed as a result thereof, or any loss, cost, charge, expense or liability thereby incurred, sustained or paid, shall be borne by the undersigned and the undersigned expressly thereto consents."

Thereupon Judge Byers granted the motion and Gustavsson appealed.

Except for the point relative to the jurisdiction of the District Court, to which we shall return, the arguments of counsel for Gustavsson read like Alice in Wonderland. He insists that the interim memorandum constituted a denial of the motion by Judge Byers, that the decision made later was an unauthorized and improper reversal of the allegedly prior decision, that all this was done without notice to Gustavsson and amounts to a deprivation of constitutional rights, as a denial of due process of law.

The plain fact is that authority to take the appeal on behalf of the surety was refused. It was refused in the exercise of a right reserved to the surety in its contract of indemnity for its protection in just such a situation as the one in which it found itself after the filing of the opinion and findings of Judge Byers after the trial. There was but one decision of the motion to strike and there was more than ample notice and opportunity for Gustavsson to submit any affidavits or other proof that might have been available in opposition to the motion.

■ On the jurisdiction question it is generally true that the service of a notice of appeal takes a matter out of the control of the District Court. But here the motion to strike was made promptly

and the appeal was not docketed until January 16, 1962. The order granting the motion to strike was settled on notice and was filed on November 13, 1961. The last sentence of Federal Rules of Civil Procedure, Rule 73(a), 28 U.S.C.A., seems clearly applicable. It reads:

"If an appeal has not been docketed, the parties, with the approval of the district court, may dismiss the appeal by stipulation, filed in that court, or that court may dismiss the appeal upon motion and notice by the appellant."

This is a case where a purported appellant moves to dismiss and we think the District Court had jurisdiction to decide the motion.

In any event, it is clear to us that this Court has power to act and we here and now, on the basis of the evidence before us, strike out the name of Massachusetts Bonding and Insurance Company from the notice of appeal.

We think it of no significance in connection with either of the two appeals before us that Hanover Insurance Company, with which the Massachusetts Bonding and Insurance Company has merged, has paid $20,000 and taken an assignment of the judgment from the Lumber Company.

■ We have given the most careful consideration to the point about the demand for the jury trial. It is important that this fundamental right be preserved intact and not eroded by unsympathetic interpretation or the imposition of conditions designed to clear up the calendars of the courts. We sustain the action of Judge Mishler in granting the motion to intervene on condition that there be filed a waiver of jury trial, and we do so only because of the peculiar circumstances of this particular case and because we believe the dilatory tactics here practiced and other maneuvers that we find it not necessary to describe in detail are not to be condoned.

Both the judgment and the order appealed from are affirmed.